JAMES THOMPSON, Appellant, *v.* M. J. CHEES-MAN, Respondent.

ASSUMPTION OF MORTGAGE—STATUTE OF FRAUDS—LIMITATIONS—RIGHTS OF PARTIES—FORECLOSURE—DEFICIENCY DECREE.

1. If the grantee, in consideration of the conveyance, promise to pay a mortgage on the land given by his grantor, he thereby makes the debt his own, and such a promise is not within the statute of frauds.

2. An action upon a liability not founded on a contract in writing is barred by section 3145, 2 Comp. Laws Utah 1888, if not commenced within two years after the right to sue accrues.

3. As between the grantee and his grantor, the former becomes the principal debtor, and the latter his surety; but the holder of the mortgage may treat both as principals, and ask for a deficiency judgment against both; and, if the grantor pays any part of the debt to the mortgagee, he may recover the same from his grantee.

4. The grantee's promise to pay the mortgagee gives him the right, upon accepting the promise, to make the grantee a principal debtor. By such acceptance, a privity of contract arises between them.

5. An agreement made on a valid consideration by one party with another to pay money to a third can be enforced by the latter in his own name.

6. A mortgage of real property, under the statutes of Utah, does not vest its title in the mortgagee, and the mortgagor may convey the title, subject to the lien, to a third party.

7. The remedy to collect a debt secured by mortgage is limited to a foreclosure, and the proceeding against the land and the defendants for a deficiency judgment constitutes one action, and the finding of the amount due

against the land and the deficiency against the individual defendants are different steps in the foreclosure action. The statute of limitations begins to run when the debt becomes due.

8. Defendant Cheesman's debt being verbal, and more than two years having run before suit was brought, it was barred by the statute of limitations above cited.

(No. 773. Decided April 20, 1897.)

Appeal from the Third district court, Salt Lake county. Hon. M. L. Ritchie, *Judge*.

Action by James Thompson against M. J. Cheesman. On the death of plaintiff, Frank Thompson, executor, and Joseph R. Lane, administrator, were substituted as parties plaintiff. From the judgment, plaintiffs appeal. *Affirmed*.

On the 25th day of July, 1894, the late James Thompson filed in the court below his complaint against John J. Snyder, Laura D. Snyder, his wife, M. J. Cheesman, and Mary A. Cheesman, his wife, in which he alleged that John J. Snyder executed to William Glassman three promissory notes, bearing date January 25, 1890, payable one year after their date,—one for $2,600, and the other two for $900 each; that he secured the same by a separate mortgage upon separate parcels of land, describing them; that, on the same day, Glassman assigned the same to James Thompson; that, on the 25th day of January of the same year, the mortgagor conveyed an undivided half interest in the land described in the first-named mortgage, and all of the real estate described in the other two, to defendant M. J. Cheesman, and, as part consideration for the conveyance of the land, Cheesman then verbally agreed with Snyder to assume and pay one-half

of the note for $2,600, and the whole of the other two notes. The complaint also asked the court to find the amount due on the respective notes, and to decree a foreclosure of the mortgages given to secure them, and a sale of the property, and, if a sufficient amount should not be realized, that a personal judgment be rendered against defendants John J. Snyder and M. J. Cheesman, respectively, for one-half of the deficiency on the note for $2,600, and against them for the entire deficiency on the other two notes. It further appears that Thompson died during the pendency of the suit, and the above-named plaintiffs were substituted as his personal representatives. To each of the three causes of action alleged the defendant M. J. Cheesman demurred, on the following grounds: (1) The facts alleged did not authorize a deficiency judgment against him. (2) The statute of frauds barred the cause of action alleged as against him. (3) That the action, as against him, was barred by the statute of limitations. The court sustained the demurrer on the third ground, and overruled it as to the first and second grounds. To the ruling of the court sustaining the demurrer, the plaintiff excepted; and, the plaintiffs having elected to stand on their complaint, the court entered a decree of foreclosure against the land for the amount found due, and costs, and a deficiency judgment against Snyder, and refused a deficiency judgment against Cheesman, to which decree plaintiffs excepted, and appealed to this court, and assign the ruling of the court sustaining the demurrer as error.

*Bennett, Harkness, Howat & Bradley,* for appellants.

*S. McDowall,* for respondent.

No briefs were filed.

Zane, C. J. (after stating the case):

The principal question presented for our decision upon this appeal is: Was the recovery of the deficiency judgment asked by the plaintiffs against the defendant Cheesman barred by the statute of limitations? The promissory notes held by plaintiffs, and the mortgages securing them, on the land conveyed to Cheesman, became due on the 25th day of January, 1891, and this suit was not commenced until July 25, 1894 (three years and six months thereafter). An action upon a contract, obligation, or liability not founded upon an instrument in writing, if not commenced within two years, is barred by section 3145, 2 Comp. Laws Utah, 1888. The action on such a contract is barred if not commenced within two years after the right to bring it accrues. The statute begins to run when the right of action accrues. Wood, Lim. (2d Ed.) p. 311, § 117.

The plaintiffs insist that the agreement of Cheesman was with his grantor, Snyder, and was a contract to indemnify him; that it was not a contract to pay the holders of the notes and mortgages, but to indemnify the mortgagor in case he should pay them; that he did not make the debt his own by his promise to pay it. Plaintiffs insist, further, that as between the grantor, Snyder, and the grantee, Cheesman, the latter, by his promise to pay the mortgages, became the principal debtor, and the former the surety, and that the holders of the notes had the equitable right, upon foreclosure of the mortgages, to be subrogated to the rights of Snyder against his principal, Cheesman, and that Cheesman's liability to pay any deficiency cannot be ascertained until after the sale of the property on the foreclosure, when the deficiency, if any, shall be ascertained; that the right of the plaintiffs against him for the deficiency will not

accrue until that time; and that the statute of limitations will not commence to run until then. The propositions upon which plaintiffs rely are: First, that Cheesman's promise was not to the holders of the notes and mortgages, but to his grantor, and that the mortgagor's right to sue will not accrue until he pays the notes; second, that plaintiffs had a right to foreclose their mortgages, and if the property, when sold, does not pay the debt secured, they can be subrogated to the mortgagor's rights upon Cheesman's promise to him, and recover a judgment against Cheesman to the extent of the deficiency; but the right to such judgment will not accrue until a deficiency is ascertained and known, if any, and the statute of limitations will not commence to run until that time. Cheesman disputes plaintiffs' position, as above stated, and insists that the order of the court granting the demurrer to the complaint should not be reversed if plaintiffs' contentions were conceded, because the statute of frauds is also a bar to a personal judgment against him. Such conflicting views of counsel render it necessary to determine the nature of the contract relied on, and its effect at law and in equity. Its language, as alleged, is: " That    *    *    *    said Snyder conveyed said real estate to said Cheesman,    *    *    *    and, in consideration of such conveyance, the said Cheesman agreed verbally with said Snyder to assume and pay the said mortgages upon the said real estate." Cheesman obtained the title to the land, and that title was the consideration of the promise by him to pay the mortgages. Instead of receiving the money for the land, and paying the notes and mortgages himself, the grantor agreed that the grantee might retain it, and pay the mortgage debt with it. As between the grantor and grantee, the debt secured by the mortgage became the

latter's debt, and the former became his surety; and the holders of the mortgage indebtedness gave their assent to the agreement when they asked for a judgment against him for the difference between the value of his land described in the mortgage, to be ascertained by a sale, and the debt which he agreed to pay. Thereby he became the debtor, according to his agreement. He simply promised to pay his own debt to the creditor of his grantor. This was something more than a verbal promise to pay Snyder's debt; it was a promise by Cheesman to pay his own debt as well; and as to the latter it was an original undertaking, on a sufficient consideration, and not within the statute of frauds. *Society of Friends* v. *Haines*, 47 Ohio 423; *Merriman* v. *Moore*, 90 Pa. St. 78; *Strohauer* v. *Voltz*, 42 Mich. 444; *Farley* v. *Cleveland*, 4 Cow. 432.

The further question arising for decision is: Did the verbal agreement of Cheesman to pay the notes, in consideration of the conveyance of the lands to him, give the holders of the notes the right, by assenting thereto, to make him their debtor? The intention of the parties evidently was that the grantee should pay the notes, and satisfy the mortgages, according to their provisions, requiring them to be paid to their holders. We must infer that the intention of the parties was that the payment promised should be made to the only parties having the right to receive it. By the verbal agreement, the holders of the notes obtained Cheesman's promise, in addition to the promise of Snyder and the securities of the mortgages. The promise of the grantor to pay the notes, and satisfy the mortgages given to secure them, and the promise of the grantee to pay them, were all for the benefit of their holders. From the fact that the grantee's promise was for the benefit of the holders of

the notes, and from the further fact that they brought suit to enforce it by asking a personal judgment on it against him, we must assume that they assented to the promise, and that a privity of contract arose between them.

We cannot assent to the proposition that the legal effect of Cheesman's verbal agreement was that he simply became bound to indemnify Snyder in case he should have the indebtedness, or any part of it, to pay. Cheesman undertook to pay the debt, and in case he did not, and Snyder paid it, he was bound to indemnify him. Snyder became a principal debtor to the holders of the notes by executing them, and Cheesman also became a principal debtor to the same holders by promising to pay them; but, as between Snyder and Cheesman, the latter became the principal, and the former the surety. The holders of the notes and mortgages had the right to foreclose the mortgages, and to treat both Snyder and Cheesman as principals, and ask for a deficiency judgment against both of them; and, if Snyder shall have a deficiency to pay, he can hold Cheesman responsible to him. The effect of the contract alleged is that Cheesman, in consideration of the land conveyed to him, agreed to pay the notes held by plaintiffs. The weight of authority is to the effect that "an agreement made on a valid consideration, by one party with another, to pay money to a third, can be enforced by the latter in his own name." "A party may sue on a promise made on a sufficient consideration for his use and benefit, though it be made to another, and not to him." *Merriman* v. *Moore* and *Society of Friends* v. *Haines, supra; Lawrence* v. *Fox,* 20 N. Y. 268; *Burr* v. *Beers,* 24 N. Y. 178; *Hendrick* v. *Lindsay,* 93 U. S. 143; 1 Pars. Cont. (8th Ed.) 468.

Where the agreement is made under seal, and the

15 UTAH—4

action must be debt or covenant, the last two authorities hold it must be brought in the name of the party to the instrument, not by a third party for whose benefit the promise was made. Under the Code of this state, there is but one form of action. So far as the reason for the rule stated in these two authorities depends upon the form of the action, it does not exist in this state. We are not called upon to decide that point in this case, as the promise relied upon is a verbal one. Snyder and Cheesman are personally liable, as principals, to the plaintiffs, on their respective promises, and, as between themselves, the latter is the principal debtor, and the former is his surety. *Rockwell* v. *Bank*, 31 Neb. 128; *Hoff's Appeal*, 24 Pa. St. 203; *Clark* v. *Fisk*, 9 Utah 94; *Crawford* v. *Edwards*, 33 Mich. 354; *Bowen* v. *Beck*, 94 N. Y. 86; *Hand* v. *Kennedy*, 83 N. Y. 150; *Garnsey* v. *Rogers*, 47 N. Y. 233; *Pardee* v. *Treat*, 82 N. Y. 385.

The last two cases referred to distinguish promises of grantees of the absolute title from those of a defeasible title, and hold that grantees of the former class, by such promises, make the incumbrance debt their own, while those of the latter class do not; that the promisors of the first class become directly liable to the lienor, while those of the other do not. While the authorities are conflicting as to the effect of the latter class of promises, we think that the effect of such a promise in any case must depend upon the language of the agreement, interpreted or construed in the light of its circumstances and its object. Were the rule stated in the two cases last mentioned conceded, it could not apply to the promise of Cheesman relied upon in this case, as the averment in the complaint is that he received the absolute title, subject to the mortgage. The rule laid down by Jones on Mortgages is that, as between the mortgagor and the mort-

gagee who receives the title, the latter becomes the principal, and that, upon the foreclosure of the mortgage, the court will subrogate the holder of the mortgage to the rights of the surety, and in that way reach the grantee upon his promise to the mortgagor, and render a deficiency judgment against both. Jones, Mortg. (4th Ed.) § 755. But in section 756 of the same book the following language is used: "Where one buys the land absolutely for a stipulated price, and, instead of paying the whole of it to his grantor, he is allowed to retain a part which he agrees to pay to a creditor of a grantor having a lien upon the land, the amount which he thus agrees to pay is his own debt." And further on in the same section the following language is used: "And there is no hardship in allowing either the grantor or the mortgagee to enforce its payment." The two sections can be reconciled upon the assumption that the author intended to state in the section first mentioned the rule applicable to grantees receiving the equity of redemption or a defeasible title, while in the latter he intended to state the rule applicable to grantees receiving the absolute title incumbered with the lien he promises to pay. Warvelle on Vendors concedes there is a diversity of opinion as to whether the grantee of the mortgagor, by such a promise, makes the mortgage debt his own, and thereby comes into direct privity with the lienor or mortgagee, or whether his promise is simply to his grantor, making a resort to the doctrine of subrogation necessary in order to reach him upon his promise or agreement, but states the general rule now is that the mortgagee has a choice of remedies, and he may treat both the mortgagor and vendee as principal debtors, and have a personal decree against either or both. 2 Warv. Vend. 660. The statutes of this state provide that "a mortgage of real property

shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale." 2 Comp. Laws Utah 1888, § 3474. A mortgage of real property, under the statutes of this state, does not vest its title in the mortgagee. The mortgagor may convey the title subject to the lien of the mortgage to a third party. While the Code of Civil Procedure of this state limits the remedy to collect a debt secured by mortgage to a foreclosure proceeding, and authorizes a personal judgment against defendants personally liable for the debt, it does not affect the nature of the promise or obligation secured, nor does it affect the promise or agreement of the grantee of the mortgagor to pay such promise or obligation; and the right to commence a suit for the foreclosure and sale of the property, and for a deficiency judgment in case the land should not sell for enough to pay the amount found due, accrued when the notes became due. The right to commence an action to collect a mortgage debt must be held to accrue at that time; it is not deferred until the sale is made and the deficiency is ascertained. The ascertainment of the deficiency is one step in the proceeding termed the remedy, as the finding of the court is a necessary step in such proceeding. The agreement of Cheesman being verbal, and the statute of limitations having run against him more than two years before suit brought, we must hold that the action for a deficiency judgment against him was barred by the statute. The judgment of the court below is affirmed.

BARTCH and MINER, JJ., concur.