# ISAAC McKAY, Respondent *v.* WILLIAM H. WARD, et al., Appellants.

Purchase of Mortgaged Premises—Assumption of Mortgage Debt—Liability of Purchaser. Promise to Pay Debt of Third Person—Consideration Necessary—Action in Name of Party to be Benefited. Part Payment of Mortgage Debt — Promise to Pay Balance — Liability Thereunder. Foreclosure Proceeding—Deficiency Demanded—Extension on Mortgage Debt — When Binding on Subsequent Purchaser—Statute of Limitations.

*Purchase of Mortgaged Premises—Assumption of Mortgage Debt —Liability of Purchaser.*

A person who purchases mortgaged premises and agrees, for a consideration, to pay the mortgage debt, is personally liable to the mortgagee or his assigns; and this whether the immediate grantor of such purchaser was personally liable or not.

*Promise to Pay Debt of Third Person—Consideration Necessary— Action in Name of Party to be Benefited.*

Where a purchaser of land, as a part of the consideration, assumes and agrees to pay the debt of a third person, no consideration, moving from such third person to such purchaser is necessary, the liability rests upon the promise to pay and an action will lie thereon in the name of the party to be benefited.[1]

*Part Payment of Mortgaged Debt—Promise to Pay Balance—Liability Thereunder.*

Independent of the principle that one who in a deed and for a consideration assumes and agrees to pay a mortgage debt, upon purchase of the mortgaged premises, is personally liable thereon, when it appears, as in this case, that appellant B.

---

[1] See *Montgomery* v. *Rief*, 15 Utah 495; *Thompson* v. *Cheesman*, 15 Utah 49; *Brown* v. *Markland*, 16 Utah 369; *Clark* v. *Fish*, 9 Utah 94.

actually assumed and agreed to pay the mortgage debt in the deed to him, and retained $700 of the purchase price of the land for that purpose, and thereafter paid $100 principal and the interest on the mortgage, and wrote plaintiff and agreed to pay the mortgage, after its assumption by him, and testified that he was indebted to plaintiff upon no other account than the note secured by the mortgage, he cannot be heard to deny his obligation.

*Foreclosure Proceedings — Deficiency Demanded — Extension on Mortgage Debt—When Binding on Subsequent Parchaser — Statute of Limitations.*

In an action for foreclosure and a deficiency judgment, it appeared that the mortgagee extended the time of payment on the mortgage debt to the original mortgagor at the request of M. who afterwards and before the expiration of the period of extension became a purchaser of the mortgaged premises subject to the mortgage, and later and before the statute of limitations would have run on the original obligation sold to B., who assumed and agreed to pay the mortgage debt, having notice of the extension. *Held*, that the extension was binding on all the parties and that considering the extension the action is not barred by the statute of limitations.

(Decided June 30, 1899.)

Appeal from the Second District Court, Weber county, Hon. H. H. Rolapp, *Judge.*

Action to foreclose a mortgage and for a deficiency judgment against B. who purchased the mortgaged property subject to the mortgage. From a judgment for plaintiff, B. appealed. *Affirmed.*

*Thomas Maloney, Esq.*, for appellant Belnap.

"The assumption of the payment of a mortgage by a grantee of the mortgaged premises does not bind him for a deficiency if his immediate grantor was not liable to the holder of the mortgage. *King* v. *Sullivan*, 31 App. Div. [N. Y.] 549; 52 N. Y. Supp. 130.

"'The liability of a grantee who assumes payment of a mortgage on land conveyed to him depends on the personal liability of his immediate grantor, so that, if the latter is not liable on the mortgage, he is not liable for any deficiency after foreclosure thereof." *Morris* v. *Mix*, 46 Pac. Rep. 58, and numerous authorities cited; *New England Trust Co.* v. *Nash*, 46 Pac. Rep. 987; *Norwood* v. *DeHart*, 30 N. J. Eq. 412.

This principle is fully stated in Mr. Desty's elaborate note to the case of *King* v. *Whitely*, 10 Paige, 465 (4 Lawy. Ed. N. Y. Ch'y, p. 1052) and many leading authorities annotated.

*Messrs. Maginnis & Halvorson*, for respondent.

Even if Ward never knew of the existence of the contract of extension, something not warranted by the testimony, the only effect of the extension would be to release Ward from personal liability; the land would still be holden. McDonald took the land subject to the mortgage even if he did not assume it, and therefore, he could not question its validity, nor show that the debt was without consideration, or that the mortgage was defectively executed. Jones on Mort. sec. 744. *Water Works Co.* v. *F. L. & T. Co.*, 73 Fed. 956; 15 Am. & Eng. Ency. 836–837.

The extension of time of payment of a mortgage debt does not impair the security as against a subsequent incumbrancer. 15 Am. & Eng. Ency. 872; *Palmer* v. *Butler*, 36 Iowa, 581.

But the fact that the contract of assumption does not appear in McDonald's deed does not show he did not assume it. The assumption need not be contained in the deed. "It may be contained in the conveyance, or it may may be by a separate writing, or it may be by parol."

*Moore* v. *Booker*, 62 N. W. 607 (N. D.); Jones on Mort. sec. 750; 15 Am. & Eng. Ency. 834, 836; *Hyn* v. *Myreck*, 62 N. W. 1125; *Hale* v. *Murphy*, 64 N. W. 211; *Hopkins* v. *Warner*, 41 P. 868.

When Belnap on the 12th day of April, 1892, accepted the conveyance from McDonald and assumed and agreed to pay the mortgage debt as part of the purchase price, he was estopped from disputing its validity, or that the debt was without consideration, or that there was any reason why he should escape the liability he has assumed, and the debt became his debt, due and payable according to the contract of the original parties.

Cases supra: *Carnahan* v. *Lloyd* 46 p. 324; *Bruman* v. *Dowse*, 12 Cush. 227; *Furnas* v. *Durgin*, 119 Mass. 500; *Keasly* v. *Hopkin*, 36 S. W. 506; Jones on Mort. 748.

MINER, J.

This was an action to foreclose a mortgage given by defendant Ward and wife, and for a deficiency judgment against Belnap, who took a conveyance of the property, subject to the mortgage, and assumed and agreed to pay it. A deficiency judgment was given against Belnap from which judgment he appeals.

The court found, among other things, that Ward and wife, while owning the premises on the 13th day of August, 1890, gave the notes in question to the plaintiff, which notes were secured by a mortgage on the property in question, due one year after date; that on November 11, 1893, Ward sold and conveyed the mortgaged property by warranty deed to one McDonald, subject to said mortgage; that on November 12, 1891, plaintiff extended the payment of the notes to November 13, 1893, at the request of McDonald, but as the agent for, and upon con-

sideration paid by defendant Ward; that McDonald was also interested in obtaining said extension. The record also shows that McDonald applied to the plaintiff for the extension on behalf of Ward; that McDonald borrowed the money from plaintiff for Ward (and that plaintiff understood that McDonald was the agent all the way through for Ward and Belnap); that said extension was in writing and recorded in the office of the recorder November 12, 1891; that on April 12, 1892, defendant Belnap purchased the property from McDonald and obtained a warranty deed therefor subject to said mortgage, and by written promise contained in the deed, agreed as follows:

"This conveys the premises on which Joseph Belnap now lives, and is given subject to a certain mortgage given to secure two promissory notes, one for one hundred dollars, and one for six hundred dollars, both drawing 12 per cent. interest per annum, made and executed by the aforesaid William H. Ward, and payable to Isaac McKay of Huntsville, which notes or incumbrance, the aforesaid Joseph Belnap by accepting this deed, assumes and agrees to pay."

The deed was accepted and recorded by Belnap. In April, 1894, Belnap had actual notice of said extension of time for payment and thereafter made payment on said mortgage, and paid both principal and interest on a note for $100, assumed at the same time and in the same deed, and secured by said mortgage; that on November 1, 1896, Belnap acknowledged said mortgage in writing and arranged to pay the same. The testimony was conflicting, but there was evidence tending to sustain the facts found by the court as above stated:

Upon this subject the transcript shows that Isaac McKay testified that his son, at his request, wrote to defend-

ant Belnap in August, 1896, that he desired the mortgage paid; that soon thereafter he received a letter from Mr. Belnap, written on the back of the letter sent him, and signed by Belnap, wherein he wrote "that he would be back the first of November and that he would pay me." The original letter was burned by his wife, with some other papers, sometime before, through mistake.

Mrs. McKay testified that she saw the letter when it was written, and saw the reply written on the back of the letter and that Belnap wrote and signed the reply; that in the letter he said he would be in about the first of November, and see Mr. McKay and pay him.

Isaac W. McKay, son of the plaintiff, testified to the writing of the letter about October 1896, to Belnap for his father, asking payment of the mortgage; that Belnap wrote on the back of the letter and returned it saying that he would be in some time in November and settle with my father.

Joseph Belnap admitted writing a letter, but said he wrote that he would be in about the first of November and see Mr. McKay about the Ward note, and denied writing that he would pay it. Belnap further testified that he was not indebted to McKay on any other account than these two notes — the $100 note and the $600 note, and that he owed McKay no other than that secured to be paid by the mortgage; that he paid the $100 note and the interest on the $600 note. Belnap also relied upon a letter written to him by McKay wherein his statement is claimed to be corroborated.

The important question is as to the liability of Belnap, McDonald's grantee, for the deficiency judgment.

Appellant claims that as Ward gave the notes and mortgage to the plaintiff, and afterwards conveyed the mortgaged premises to McDonald, subject to the mortgage,

but without assuming it in writing, and the fact that Belnap purchased the mortgaged premises from McDonald, and assumed and agreed to pay the mortgage, would not make him liable to pay the mortgage or upon any deficiency judgment obtained thereon, because McDonald was not personally liable to pay it, and no privity existed between the parties. The case therefore presents the question whether the obligation assumed by one who purchases the mortgaged premises, and agrees for a consideration to pay the mortgage debt, shall be held to be available to the mortgagee or his assignee in all cases, or only in cases where the purchaser's immediate grantor was personally liable for the payment of the debt.

There is much conflict in the authorities upon the subject. New York, New Jersey, and several other states hold that a grantee who has assumed to pay the mortgage as a part consideration of his purchase is not liable for a deficiency arising upon a foreclosure and sale in case his grantor was not personally liable for the payment of it; while Pennsylvania, Illinois, Nebraska, Wisconsin, Iowa, Ohio, Missouri and Utah, and possibly some other states, hold that a purchaser is liable on his assumption and agreement to pay the mortgage, although the agreement to assume and pay it be in a deed from a grantor who was under no personal liability to pay the mortgage. In these states it is held that the price of the land is a sufficient consideration for the agreement to pay the mortgage debt, and that where the amount of the mortgage is withheld for the purpose of satisfying the obligation, a vendor may rightfully direct how, when, and to whom the purchase price of property he sells may be paid; that he may rightfully receive it to himself, donate it to public charity, or make such other disposition of it as may best meet his views; that where a promise or contract has been made between

two parties for the benefit of a third, action will lie thereon at the instance of the third party to be benefited, although the promise or contract was made without the knowledge of the third party, and without any consideration moving direct from him; that if the vendee agrees to ˵pay in accordance with such directions of the vendor, he cannot set up as a defense that his vendor was under no duty to apply and pay the fund in the manner agreed. The following cases support the latter contention: *Merriman* v. *Moore*, 90 Pa. St. 78; *Dean* y. *Walker*, 107 Ill. 541; 47 Am. Rep. 467; 1 Jones on Mortgages, (5th ed.) 760; *Hare* v. *Murphy*, 64 N. W. R. 211; 45 Neb. 809; *Marble Sav. Bank* v. *Messarvey*, 101 Ia. 286; *Bay* v. *Williams*, 1 N. E. 340; *Enos* v. *Sanger*, 96 Wis. 150; *Brewer* v. *Maurer*, 38 Ohio St. 543; 43 Am. Rep. 436; *Marble Sav. Bank* v. *Mesarvey*, 70 N. W. R. (Ia.) 198; *Benson* v. *Green*, 72 N. W. R. 555; *Bay* v. *Williams*, 112 Ill. 91; 3 Pom. Eq. Jur. sec. 1207; 1 Beach Mod. Law of Cont. 196 and note; *Ross* v. *Kennison*, 38 Ia. 396; Pomeroy on Code Rem. sec. 139; *Enos* v. *Sanger*, 70 N. W. R. (Wis.) 1069; *Bassett* v. *Hughes*, 43 Wis. 319; *Montgomery* v. *Rief*, 15 Utah, 499; *Brown* v. *Markland*, 16 Utah, 360; *Clark* v. *Fisk*, 9 Utah, 94; *Hoff's Appeal*, 12 Harris, 200; *Justice* v. *Tallman*, 5 Norris, 147; *Heim* v. *Vogel*, 69 Mo. 529.

It sufficiently appears from the whole record that Belnap agreed to pay McDonald $1,170 for the land in question, and over and above the amount paid down he assumed and agreed to pay the two notes secured by the mortgage made by Ward to McKay, amounting to $700, and interest, as consideration for the land. When he paid these notes, and not until then had he paid the consideration he had agreed to pay for the property. This agreement was binding upon him and was made for a good and

valid consideration. The amount of the mortgage was deducted from the consideration which he had assumed and agreed to pay for the land. That sum he retained in his hands for the express purpose of paying off the incumbrance. He was then living on the land, and his title was good when he made the payments. He actually paid $100 upon the principal and interest of the mortgage he assumed. He accepted the deed with the assumption named therein and knew its provisions. There was no deception practiced upon him.

The doctrine of the liability of a grantee in a deed who assumed and agreed to pay a prior mortgage as part consideration for the purchase price of land sold, although his grantee was not liable to pay said mortgage, rests in several states upon the doctrine that where one person, for a valuable consideration, engages with another to do some act for the benefit of a third person, the latter may maintain an action against the promisor for a breach of the agreement. *Enos* v. *Sanger*, 96 Wis. 150; *Marble Sav. Bank* v. *Mesarvey*, 101 Ia. 285; *Dean* v. *Walker*, 107 Ill. 540.

In the case of *Montgomery* v. *Rief*, 15 Utah, 495, the court, speaking through Mr. Justice Bartch, said: "This question has been the subject of much controversy in the courts, and as a result the prevailing doctrine in this country, as shown by the weight of authority, doubtless is that, where a promise or contract has been made between two parties for the benefit of a third, an action will lie thereon at the instance, and in the name of the party to be benefited, although the promise or contract was made without his knowledge and without any consideration moving from him." *Thompson* v. *Cheesman*, 15 Utah, 49; *Brown* v. *Markland*, 16 Utah, 360.

While the above cases do not deal directly with a ques-

tion like the one under consideration, the principle laid down therein is the basis of the doctrine here contended for.

The case of *Clark* v. *Fisk*, 9 Utah, 94, was where Stowell sold land to Swan, who executed back a purchase money mortgage thereon. Swan thereafter sold part of the land to Barry, who gave back to Swan a purchase money mortgage thereon, but who did not assume any mortgages made by Swan, or otherwise so far as appears from the record. Barry thereafter sold the property to Fisk, with a clause in the deed that the grantee assumed and agreed to pay the mortgaged indebtedness. Suit was thereafter brought to foreclose the first Swan mortgage to Stowell, which was then held by Clark, and for a deficiency judgment against Fisk thereon, and the court held that Fisk was liable on his assumption in the mortgage, and rendered a deficiency judgment against him. The court, speaking through Mr. Justice BARTCH, said in substance (as shown by the head note) that where a vendee has given a mortgage to secure some part of the purchase price, and then the vendee sells the land by a deed wherein the grantee therein assumes and agrees to pay the mortgage, the vendee and mortgagor cannot release his grantee in the deed, so as to affect the rights of the mortgagee, without the mortgagee's consent. Where a grantee in a deed assumes and agrees to pay a mortgage, his agreement inures to the benefit of the mortgagee and his assigns, and they obtain all the rights of the grantor in the deed as against the grantee.

In this case we do not look elsewhere than to the opinion for the facts upon which the opinion is based. The court is presumed to have embodied all the material facts as it finds them in the opinion of the court, and on these facts the court renders its decision. It is not to be expected

that resort will be had to the files of the trial court for facts or conclusions that should be embraced in the opinion. It will be seen from the statement in the above case, that the principle decided corresponds with the case now under consideration. In that case Swan gave the notes and mortgage sought to be foreclosed, and Barry, Fisk's grantor, did not assume the prior Swan mortgage, and was not liable thereon, yet the court holds that Fisk, Barry's grantee, was liable for a deficiency judgment, although Fisk claimed that his promise to pay the mortgage was inserted in the deed without his knowledge, and although Barry had actually released him from the obligation assumed in the deed.

In *Marble Sav. Bank* v. *Mesarvey*, 70 N. W. R. (Ia.) 1069, it is held that a covenant by a purchaser of mortgaged premises to pay the mortgage debt, may be enforced by the mortgagee, whether such purchaser's immediate grantor was personally liable for the debt or not.

In *Dean* v *Walker*, 107 Ill. 540, it is held that where a deed for land imposes the obligation upon the grantee to pay and discharge the existing incumbrance upon the land, the grantee's liability to the holder of the incumbrance rests upon the doctrine that when one person makes an agreement to another for the benefit of a third person, the latter may maintain an action upon it. In such case it is not necessary that there should be any consideration passing from the third person, and it was immaterial whether the grantee was personally liable for the debt or not.

In *Beeson* v. *Green*, 72 N. W. R. (Ia.) 555, it is held that a grantee of a deed with a clause therein that he assumed the incumbrance, obligated him to pay the mortgage the same as if he signed the deed containing the promise, and parole evidence was inadmissible, in the

absence of fraud, to show that the deed was not executed in accordance with the contract.

In *Merriman* v. *Moore*, 90 Pa. St. 78, it is held that a grantee in a deed may so contract therein with his grantor as to make himself personally liable to a mortgagee for the amount of the mortgage therein even though the grantor was not liable to pay the mortgage; that the grantee in a deed may so contract therein with his grantor as to make himself personally liable to a mortgagee for the amount of the mortgage thereon, even though the mortgagor was not liable to pay the mortgage; that the grantor had the right to contract with his purchaser as to whom, when, and how the consideration for the land should be paid, and the grantee would be liable on such promise. *Bay* v. *Williams*, 112 Ill. 91.

In *Enos* v. *Sanger*, 70 N. W. R. (Wis.) 1069, it was held that where a subsequent grantee of mortgaged premises, in the conveyance to him, assumes the mortgage as part of the consideration, his liability rests solely on such consideration and promise, and no other consideration need pass from the mortgagee to the grantee, though his immediate grantee was not personally liable to the mortgagee.

In *Brewer* v. *Dyer*, 7 Cush. 337, the court said: "Upon the principal of law long recognized and clearly established, where one person for a valuable consideration, engages with another to do some act for the benefit of a third, the latter who would enjoy the benefit of the act, may maintain an action for the breach of such agreement. It does not rest upon the ground of any actual or supposed relationship between the parties, as some of the earlier cases seem to indicate, but upon a broad and more satisfactory basis that the law, operating upon the acts of the parties, establishes the privity, and implies the promise on which the action is found."

In *Enos* v. *Sanger*, 70 N. W. R. (Wis.) at page 1070, in speaking of the above doctrine, the court say: "In most, if not all, jurisdictions where the liability of a grantee to pay a debt secured upon the property conveyed to him, because of his promise in the conveyance, is sustained on the ground stated, the fact of whether the grantor was liable for the debt or not is held immaterial."

In *Brewer* v. *Maurer*, 38 Ohio St. 543, 43 Am. Rep. 436, in discussing this same question the court said: "This question arose in *Merriman* v. *Moore*, 90 Pa. St. 78. That was an action, like the present, to recover for a deficiency against a grantee, who held under a deed, subject to a mortgage which the grantee had verbally assumed to pay as part of the purchase money. There, as here, it was insisted that, as the grantor was under no personal obligation to pay the debt, his grantee's promise to pay the same was not binding, for want of a consideration. The court say, the consideration was the price of the land. It was nothing to the grantee what the grantor did with the purchase money. He might direct how it should be paid. If the vendee agrees to pay it as the vendor directs, the former cannot set up as a defense that his vendor was under no duty to apply it in that way. If this principle be sound, and I see no reason to question it in a case like the present, then it follows that the plaintiffs in error are liable on their covenant to pay, even though Mary Braundel was not. French, when he sold the land to them, made his conveyance subject to the mortgage, which they agreed to pay, as part of the purchase money. He, for reasons that are obvious, having assumed this debt, and having warranted the title, devoted a portion of the purchase money, equal to the debt, to its discharge. At that time the debt was not all due. The promise was

20 Utah—11.

to pay the purchase money in the way specified in said mortgage. It was a promise for the benefit of all prior grantors, including the mortgagor. No reason can be perceived why, in the furtherance of justice, the plaintiffs in error should not pay the purchase money in the manner they had contracted to pay and thereby relieved the mortgagor, through whom they claim, from his liability. The promise of French to her was therefore a valid contract. The consideration for it was purchase money which she has the right to stipulate for and direct how it should be paid, and which he agreed to pay in the manner stated. Upon her executing the conveyance to him, his promise to her was as binding as if she had been a *feme sole*. This being so, he was personally bound, and in like manner his grantees became bound to him."

In this case it does not appear that the grantor was liable to pay the debt. While the case was decided on another point, the opinion shows that Ohio stands with other states on this question.

In *Heim* v. *Vogel*, 69 Mo. 529, where a grantor conveyed to a grantee, a lot covered by a previous mortgage, which the grantor was not liable upon, and the grantee agreed and assumed to pay the mortgage, it was held that his agreement to pay embraced in the deed, rendered him liable to pay the mortgage. The case of *Hicks* v. *Hamilton*, 144 Mo. 495, is not in point. In that case there was no consideration for the promise of the grantee.

There is still another reason why defendant Belnap is liable for a deficiency judgment, independent of the principle laid down. Mr. Belknap assumed and agreed to pay that mortgage debt in the deed to him, and retained $700 of the purchase price of the land in his hands with which to pay such incumbrance. Showing that was his understanding, he therafter actually paid the $100 note

and interest secured by the agreement named in the deed, and thereafter when asked by the holder to pay the mortgage, he wrote to plaintiff agreeing to pay it. Belnap also testified when upon the witness stand that he was indebted to McKay on no other account than those notes, the $100 and the $600 note.

Under such circumstances the appellant should be held liable to pay the debt he had assumed and agreed to pay, irrespective of his liability because of the assumption contained in the deed.

After an examination of all the conflicting authorities, we are of the opinion, as based upon the better reason, that where a grantee, in a conveyance to him, assumes and agrees to pay the debt of a third person as part of the consideration for his purchase, there is no necessity for any consideration to pass from such third person or his debtor to such grantee to support such agreement. A portion of the consideration for the purchase being left in such grantee's hands, and appropriated by the grantor to the payment of such debt, which debt such grantee agreed to pay in consideration of the conveyance and of such appropriation of the purchase money, he cannot be heard to object to the performance of his contract because his grantor was not liable to such third person; and when Belnap received the deed of the premises in question and therein agreed and promised to assume and pay the mortgage specified in the deed, and retained $700 of the purchase price of the land to pay the mortgage, he became personally liable to pay the same, notwithstanding his grantor was under no obligation and could not be held liable to pay said mortgage. The liability rests upon the consideration and the promise to pay the mortgage.

Under the facts as disclosed the plaintiff was entitled to a deficiency judgment.

We are also of the opinion that the court committed no error in admitting in evidence the contract between the mortgagee and the grantee's immediate grantor by which the time for the payment of the mortgage indebtedness was extended. The evidence shows that the extension was for a definite period, and granted at the instance of the grantor, who had purchased the property subject to the mortgage. The parties were bound by the extension.

We are also of the opinion that the action was not barred by the statute of limitations taking into consideration the time covered by the extension.

We find no reversible error in the record. The judgment of the district court is affirmed, with costs.

BASKIN, J., concurs.

BARTCH, C. J., dissenting.

*Mortgaged Premises—Conveyance of—Assumption Clause in Deed—Grantor not Personally Liable—When Grantee May be Personally Liable to Owner of Mortgage.*

> The grantee of mortgaged premises, who in his deed of conveyance, has merely assumed and agreed to pay the mortgage, and whose immediate grantor is not personally liable for the mortgage debt, cannot, according to the great weight of authority, be held personally liable to the mortgagee or owner of the mortgage, unless it is clearly shown that the grantor intended to confer a benefit upon him; or unless the grantee accepted the deed with full knowledge of an assumption clause therein containing apt words showing that the grantor intended to bestow a benefit upon the mortgagee.

BARTCH, C. J., dissenting from the deficiency judgment.

I cannot agree with my brethren that a deficiency judgment should be entered in this case.

The plaintiff brought this action to foreclose a mortgage

executed to him by defendant Ward and wife on certain real property, and to obtain a deficiency judgment against defendant Belnap, who purchased the property covered by the mortgage. At the trial a decree of foreclosure was entered, and it was therein ordered that any deficiency which might remain after sale of the property, should be docketed against the defendant Belnap. The deficiency judgment which the majority affirm amounts to $106.25.

It appears from the abstract that the defendant Ward, the mortgagor, conveyed the mortgaged property to one William W. McDonald, *subject to the mortgage* which had been given by the grantor as security for two notes, and that McDonald afterwards conveyed the same property to defendant Belnap subject to the same incumbrance which the grantee assumed and agreed to pay.

The important question is as to the liability of the grantee Belnap. If the mortgagor had conveyed the premises direct to Belnap with the assumption clause, it would have been conceded, under all the authorities, that the grantee would be liable for the payment of the mortgage debt, and, in case of foreclosure, for any deficiency which might arise after sale of the property. Likewise it must be conceded that McDonald, the grantee of the mortgagor and grantor of Belnap, who purchased the property subject to the mortgage, but did not assume or agree to pay the debt, was not liable for any deficiency arising upon foreclosure and sale. This being so, was Belnap, merely because of the assumption clause in his deed, liable for that for which his immediate grantor was not liable? In other words, is a grantee of mortgaged premises whose deed recites that the land is sold subject to the mortgage, and that the grantee assumes and agrees to pay the same, liable, upon foreclosure and sale, for any deficiency, in case his grantor was neither in law nor equity personally liable for the mortgaged debt?

The authorities, it is true, as to this proposition, are not harmonious, and to attempt to reconcile them would be useless. Mr. Justice MINER mentions Utah as one, among several other states which has held "that a purchaser is liable on his assumption and agreement to pay the mortgage, although the agreement to assume and pay it be in a deed from a grantor who was under no personal liability to pay the mortgage," and cites four Utah cases, but an examination of them will show that neither one of them supports his statement. Nor have I found or been cited to any case where this precise question has been before this court. The first one cited is *Montgomery* v. *Rief*, · 15 Utah, 495. There the action was brought against Rief as principal, and Spencer and Dee as sureties on a bond. Rief was the original contractor for the construction of the building for the Agricultural College of Utah, and executed the bond to the trustees of the college for the faithful performance of his contract. The contract, among other things, provided that Rief should furnish all the material and perform the labor necessary to complete the building. One Bailey furnished certain material for the construction of the building, and, after a portion of his claim had been paid, he assigned the balance thereof to Montgomery, which, upon default of Rief, the sureties refused to pay.

The main question was whether under the contract and bond, the obligation of the sureties extended to persons who furnished material for the construction of the building. In reference to this we held that, where a bond was given for the faithful performance of a contract for the erection of a public building, the bondsmen, whose undertaking was for the benefit of the State, and not for material men and laborers, were not liable upon their bond to third persons for labor performed or material furnished,

and that no new and indefinite liability could be established in such case by implication in behalf of a mere stranger to the contract, who might become incidentally benefited by its performance. The rule which Mr. Justice Miner quotes from the opinion in that case was stated and then limited as will hereinafter appear. The rule no one doubts, but the limitations upon it are as important as the rule itself, and ought to be enforced in a case like the one at bar.

*Clark* v. *Fisk*, 9 Utah, 94, is also cited to show that this state has maintained the affirmative of the question under consideration, and after stating the facts of that case as they doubtless conceive them to be, and after referring to the holding therein, my brethren, in their opinion herein, say: "In this case we do not look elsewhere than to the opinion for the facts upon which the opinion is based. The court is presumed to have embodied all the material facts as it finds them in the opinion of the court, and on these facts the court renders its decision. It is not to be expected that resort will be had to the files of the trial court for facts or conclusions that should be embraced in the opinion. It will be seen from the statement in the above case, that the principle decided and the facts correspond with the case now under consideration."

Are not the statements contained in this quotation rather remarkable? The query in my mind is, their pertinency to the case, and as to what prompted them. Were my brethren anticipating a dissenting opinion? Were they fearful, lest a different state of facts might be shown from the record which would demonstrate the fact that the very case, upon which they rely as showing that the question under consideration had already been decided in this state in accordance with their views, was not in point

at all ? But regardless of the reason for or the applicability of the language, above quoted, to the case at bar, I entirely agree with the majority when they say: "We do not look elsewhere than to the opinion for the facts upon which the opinion is based," and, if they had added that they did not look into the opinion for *all* the facts stated therein I would concur with them in that, for it does seem to me that an examination of all the facts stated in that opinion will show a case entirely different from the one at bar.

As to the statement: "The court is presumed to have embodied all the material facts as it finds them in the opinion of the court," is that not a rather violent presumption, declared in face of the fact that, both in England and this country, the books are full of cases in which there was no attempt to state all the material facts, on which the decisions were based, in the opinions of the courts? Is not the statements of the facts, upon which a decision is based, within the province of the reporter, in his editorial capacity? The judge who writes the opinion may or may not state them, or may state some of them in the opinion, as he chooses. If in a subsequent case the decision be cited as an authority, the court has the hitherto unquestioned and unquestionable right to resort to its records to ascertain the real facts upon which a decision was based, and, where its application to the facts of such subsequent case is seriously questioned, I apprehend it is the duty of the court to do so, if the records are at his command, and such reference is necessary to ascertain the true state of facts on which the case was decided.

The case under consideration was tried before Mr. Justice MINER, while he was on the territorial bench. The facts stated by his honor, in the opinion herein, as having controlled that case, are, it occurs to me; wholly mislead-

ing. I will, therefore resort, not "to the files of the trial court for facts," but to the abstract of the record filed in this court, and will quote from the findings of fact made and approved by him at the trial of the cause, and will then leave it to those who may have occasion to interest themselves in this important question, to judge whether the statement of facts now made by him is fair and correct. The findings of fact, abstract p. 48, on the real points in controversy, read: "That at the time of said acceptance of said deed the said defendant A. C. Fisk, knew of said assumption clause, and accepted the deed with that understanding, and therein agreed in writing to assume said indebtedness and to pay the same. * * * Further, that prior to the execution of said release, Sidney Stevens had purchased said note for a valuable and adequate consideration, upon the representation that said A. C. Fisk was liable for and had assumed the payment of said notes, and in so purchasing had relied on such representations and had accepted the same for his respective benefit, of which defendant, Archie C. Fisk, had no notice.

Further, that before the execution of the deed of release from Barry to Fisk, defendant W. R. Swan, previous owner and holder of said notes, and while he so held the same, notified the said Fisk of his acceptance of said clause of assumption, and that he held the said Fisk thereto. Further, that said Fisk did agree to become personally responsible for the payment of said note, and that if the property was insufficient to pay any judgment which might be recovered on the notes, he would pay such deficiency."

It is true Swan conveyed to Barry and Barry to Fisk, but Fisk was the real party in interest, and the conveyances were so made at Fisk's instance, for the reason, as shown in evidence, that he did not want the notes made in

his own name. Barry, who in three days, after conveyance to him, conveyed to Fisk, evidently had no interest whatever in the transaction, and the two conveyances therefore were in effect the same as a conveyance from Swan direct to Fisk. These things appear not only from the record, but also substantially from the opinion of the Supreme Court, which on this subject in part, reads as follows: "The witness, F. W. La Frentz, after testifying that he knew Fisk, and was negotiating with him about the property, said: 'The final result was that the deeds were made to a man by the name of Barry, at Fisk's instance.' And further, he said: 'I do not recollect whether these notes and mortgages came through our office or not. I never met Mr. Barry. Never saw him to my knowledge. The negotiations were had with Fisk. I recollect no conversation with Mr. Fisk about this man Barry. Fisk, I think, objected to giving his own notes and mortgages. Fisk was the real party in interest, as I understood it.' And on cross-examination witness said: 'After we had discussed the matter, Fisk requested me to make him a proposition. Fisk said to me afterwards that he objected to giving his own notes, because he did not want them flying around the country.' It also appears from the record that before the execution of the release by Barry, Swan notified Fisk of his acceptance of the assumption, and that Fisk agreed to become responsible. Clark, who brought the suit, was the holder of the Swan note."

And again, referring to Fisk, it was said: "It seems clear from an examination of the record that the appellant was the real party in interest when Barry made the purchase."

Aside from the nature of the transaction it thus appears from the findings of fact and opinion that after the conveyances had all been made Fisk agreed to become

responsible for the very note in controversy, "and that, if the property was insufficient to pay any judgment which might be recovered on the notes, that he would pay such deficiency."

How can it be asserted that a case decided under such facts and circumstances, is in point under facts like those in the case at bar?

*Thompson* v. *Cheesman*, 15 Utah, 43, is another Utah case cited and relied upon, but the question here under consideration was neither presented nor decided therein. In that case there had been executed by John J. Snyder one note for $2,600 and two others for $900 each, all secured by separate mortgages on separate parcels of land and afterwards (quoting from the statement of facts) the "mortgagor conveyed an undivided half interest in the land described in the first-named mortgage, and all of the real estate described in the other two, to defendant M. J. Cheesman, and, as part of the consideration for the conveyance of the land, Cheesman then verbally agreed with Snyder to assume and pay one-half of the note for $2,600, and the whole of the other two notes." As is apparent that was simply a case of the vendee verbally agreeing to pay the debt of his vendor, and has no application to the case at bar?

*Brown* v. *Markland*, 16 Utah, 360, is the remaining case cited from this State on the question under consideration. In that case certain parties, owners of a mine, entered into a written contract with the defendant, whereby, for a consideration, they agreed to convey their mine to him free of incumbrance, except a mortgage lien, and certain claims of persons for labor performed and materials furnished at the mine, which mortgage and claims, the defendant assumed and agreed to pay, and the plaintiff recovered on the ground that her claim was for supplies furnished the

mine and was included within the contract, and that the contract was made for her benefit.

It thus seems manifest that none of those cases have any application to facts like those in the case at bar, and no case has come to my notice, nor has any been cited, in which this court has determined the precise question herein presented.

Likewise, upon examination, it seems clear that *Ross* v. *Kennison,* 38 Ia. 396; Hoff's Appeal, 12 Harris, 200; *Justice* v. *Tallman,* 5 Norris, 147; *Bassett* v. *Hughes,* 43 Wis. 319; and *Brewer* v. *Dyer,* 7 Cush. 337, cited in the opinion of the majority of the court, are not in point. It does not appear that in either of these cases the same question was involved, nor that the facts were similiar to those which gave rise to the controversy in this case.

Nor does *Beeson* v. *Green,* 103 Ia. 406, the latest case cited from Iowa, in the opinion of Mr. Justice MINER, add strength to their position, for therein it is said: "A mortgagee may maintain an action at law on the covenant to pay in the mortgage or on the note, and may thereafter foreclose his mortgage. It is not perceived on what tenable ground the same rules do not apply to a grantee in a deed assuming to pay a mortgage for which the grantor is personally liable. Such grantee becomes obligated for the payment of the debt."

Doubtless a grantee is liable upon his assumption to "pay a mortgage for which the grantor is personally liable." But why add the phrase "for which the grantor is personally liable?" Does this indicate an intention of that court to depart from its ruling in *Marble Savings Bank* v. *Mesarvey,* 101 Ia. 640? Under the doctrine of the latter case that phrase is wholly unnecessary.

In *Brewer* v. *Maurer,* 38 Ohio St. 543, the facts were not like those in the case at bar. They are stated in the

syllabus as follows: "The plaintiff held the notes of B., secured by a mortgage on his land. B. conveyed the land to a married woman, by deed of general warranty, in consideration of a sum of money paid, and of her accepting a deed in which 'said grantee assumes * * * as part of the purchase money,' said mortgage debt. This was the only separate property she possessed. She conveyed the land to F., and he conveyed to defendants by like deeds, each containing a stipulation in favor of their grantors that the grantees assumed and agreed to pay the mortgage debt as part of the purchase money. Upon foreclosure and sale, the proceeds were insufficient to pay the mortgage debt."

It will be noticed that each grantee assumed the mortgaged debt, and was liable therefor,—hence the grantee becoming the grantor, the grantor was likewise liable, although, it is said by my brethren that "it does not appear that the grantor was liable to pay the debt."

Both doctrines are discussed in that case, and after reference to New York and New Jersey cases, among them, *Vroomer* v. *Turner*, 69 N. Y. 280, it was said: "These cases rest upon the theory that as the grantor is not personally liable for the mortgaged debt, the promise of the purchaser is without consideration to support it, and is, therefore, a *nudum pactum*, and that, as the right of the mortgagee is derivative merely, to be substituted to his debtor, he can only maintain an action where his debtor could. As, in this case, the privity existed between the mortgagor and mortgagee, which would give the latter a right to be substituted to the former, on the promise of the purchaser, the only question in fact is, was there a sufficient consideration to support the promise of the plaintiffs in error."

Neither doctrine appears to be disapproved therein, nor,

under the facts, was it necessary to do so. The case is cited in 9 Ency. Pl. & Pr., 469, as supporting the rule that a grantee is not liable on his covenant if his grantor was not personally liable for the debt.

*Heim* v. *Vogel*, 69 Mo. 529, is also cited by the majority, to show that the State of Missouri is in harmony with their views on this question. Even if it were conceded that it sustained their views, it could no longer be cited as the law of that state on this subject, as is apparent from *Hicks* v. *Hamilton*, 144 Mo. 495, a late case decided in 1898, where Mr. Justice WILLIAMS, delivering the opinion of the court, observed: "If plaintiff is to rest upon the proposition that he can recover upon the promise of defendant to Cowling as made for his benefit, he is met by the objection that Cowling was in no manner indebted to or connected with plaintiff, and bore no such relation to him as would give Cowling any interest in having the assumption clause inserted in the deed. *Vrooman* v. *Turner*, 69 N. Y. 280, involved precisely the same question that is presented in the case at bar. It was ruled that 'a grantee of mortgaged premises whose conveyance recites that the land is conveyed subject to the mortgage, and that the grantee assumes and agrees to pay the same as part of the consideration, is not liable for a deficiency arising upon a foreclosure and sale, in case the grantor was not personally liable, legally or equitably, for the payment of the mortgage.' This court has in several recent opinoins cited and approved that case."

See also other Missouri cases hereinafter cited. Notwithstanding my brethren say *Hicks* v. *Hamilton*, "Is not in point," an examination of the late Missouri cases will doubtless show that the law of that state is adverse to the rule adopted by the majority in this case.

Nor is that rule supported in Pomeroy on Cod. Rem.,

Sec. 139. After discussing the doctrine of a promise by one to another for the benefit of a third, the author says: "The true extent and application of the doctrine, and the proper limitations upon it, have been discussed and fixed by the New York Court of Appeals in very recent cases," and after citing numerous cases in support of this observation, in note 4, it is said in the note: "The principal limitations upon the doctrine, as determined by the New York cases, may be stated as follows: In order that the third person may sue upon the promise, it must be designed to be primarily for his benefit, and not primarily for the exoneration of the promisee. *Arnold* v. *Nichols*, 64 N. Y. 117. There must have been some obligation or duty owing from the third person (plaintiff) to the promisee which would give the third person a legal or equitable claim to the benefit of the promise, or an equivalent from him personally; a mere stranger to the contract cannot sue."

1 Jones on Mort., Sec. 760, simply states the rule on each side of the question.

Nor does 3 Pomeroy's Eq. Jur., Sec. 1207, or 1 Beach Mod. Cont., Sec. 196, appear to relate to the liability of a grantee on his assumption when his grantor is not personally liable for the mortgage debt.

In Pennsylvania, Illinois, Nebraska, Iowa, and Wisconsin, however, it has been held, as may be observed, by reference to the cases, from those states cited below, and which are also cited in the opinion of my brethren, that such a grantee is personally liable, upon his assumption, to pay the mortgage debt, and hence for any deficiency arising upon foreclosure and sale, although the agreement to assume be contained in a conveyance from a grantor who was under no personal obligation, legally or equitably, to pay the mortgage. *Merriman* v. *Moore*,

90 Pa. St. 78; *Dean* v. *Walker*, 107 Ill. 540; *Bay* v. *Williams*, 112 Ill. 91; *Hare* v. *Murphy*, 45 Neb. 809; *Marble Savings Bank* v. *Mesarvey*, 101 Ia. 285; *Enos* v. *Sanger*, 96 Wis. 150.

By reference to these cases, however, it will be noticed that they were not all decided by unanimous courts. In *Merriman* v. *Moore*, Justices Gordon and Mercur dissented; in *Dean* v. *Walker*, there is a dissenting opinion by Mr. Chief Justice Sheldon and Mr. Justice Dickey; and in *Bay* v. *Williams*, there is a dissenting opinion by Mr. Chief Justice Scholfield, concurred in by Justices Dickey and Sheldon.

In those States the mortgagee is permitted to recover the debt against such a vendee of the mortgaged premises, whether the grantor was personally liable or not, on the principle that a promise, upon a sufficient consideration, of one party to another for the benefit of a third party, may be enforced by the latter. Adhering strictly to this rule, as it seems, the courts, which maintain the affirmative of the question above stated, permit such a grantee neither to show a want of consideration nor that there is no privity or equity existing between him and the mortgagee, nor to set up as a defense, to any personal liability under the mortgage, that his grantor was under no legal or equitable obligation to pay the mortgage debt.

Notwithstanding the high respect to which the courts maintaining that doctrine are entitled, I feel confident that an examination of the decisions of courts upon this subject will show that a large majority of them, and the soundest reason, are to the contrary.

The question has many times been before the court of last resort in the State of New York, and there it has been uniformly decided in the negative. It first arose in that State in *King* v. *Whitely*, 10 Paige, 465, decided in

1843. In that case one Wadsworth mortgaged certain premises, and then the bond and mortgage were assigned to King, the appellant.

Afterwards one Wilkes conveyed the mortgaged premises to Whitely and Close, together with other real estate, subject to the mortgages thereon; and the conveyance to them recited that the grantees assumed the payment of such mortgages, and were to pay them off as a part of the consideration of the conveyance. But it was not charged in the bill, nor did it appear from the proofs, how or from whom Wilkes obtained his title to the premises, or that he was under any obligation to pay off the mortgage, if the proceeds of sale under foreclosure should prove insufficient for that purpose. Chancellor Walworth held, that, as the grantor in that conveyance was not personally liable to the holder of the mortgage to pay the same, the grantees were not liable to the holder of the mortgage for the deficiency, upon a foreclosure and sale of the mortgaged premises, and based the rule on the doctrine of subrogation. That doctrine is predicated upon the relation of principal and surety and proceeds upon the principle that the assumption of the grantee binds him to indemnify the grantor, and, therefore, if there is no liability on the part of the immediate grantor to pay the mortgage debt, there can exist no personal liability on the part of the grantee. In the application of this doctrine, the assumption of the grantee to pay the mortgage is treated as collateral security, acquired by the grantor, which inured to the benefit of the mortgagee by equitable subrogation.

Such, it appears, was the doctrine in New York from the time of the decision in *King* v. *Whitely*, until the case of *Burr* v. *Beers*, 24 N. Y., 178, decided in 1861, when Mr. Justice Denio, it seems, preferred to base the

right of the mortgagee to recover on the doctrine applied in the cases maintaining the affirmative of the questions, here under consideration, that if a party upon sufficient consideration makes a promise to another for the benefit of a third person, the latter may sue on the promise.

In *Vroom* v. *Turner*, 69 N. Y. 280, a leading case upon this subject, where the question for determination was the same as the one involved in the case at bar, the two doctrines were harmonized, and it is shown that the proposition, that a grantee of mortgaged premises, who has assumed and agreed to pay off the mortgage, is not liable for a deficiency judgment upon foreclosure and sale if his immediate grantor was not personally liable, legally or equitably, to pay the mortgage, can be based upon either, and it is maintained that the rule is not inconsistent with the doctrine of a promise for the benefit of a third party, the fundamental reason of the rule being that there is no consideration to support the agreement of assumption.

Mr. Justice Allen, speaking for the court, said: "The rule which exempts the grantee of mortgaged premises subject to a mortgage, the payment of which is assumed in consideration of the conveyance as between him and his grantor, from liability to the holder of the mortgage when the grantee is not bound in law or equity for the payment of the mortgage, is founded in reason and principle, and is not inconsistent with that class of cases in which it has been held that a promise to one for the benefit of the third party may avail to give an action directly to the latter against the promisor, of which *Lawrence* v. *Fox*, (20 N. Y. 268) is a prominent example. To give a third party who may derive a benefit from the performance of the promise, an action, there must be, first, an intent by the promisee to secure some benefit to the third party, and second, some privity between the two, the

promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally."

From this statement of the law it is clear that not every contract, made by one party to another, the performance of which may benefit a third party who is a stranger to it, will give a right of recovery to the third party against the promisor.

In line with the limitation, upon the rule, expressed in the above quotation, affecting the right of recovery by the third party upon the promise, this court in *Montgomery* v. *Rief*, 15 Utah, 495, one of the cases hereinbefore considered, said: "If mere strangers to a contract could maintain an action thereon because of any indirect or incidental benefit which might accrue to them through its performance, there could be no certain limit respecting the number and character of actions which might be maintained thereon. No such application of the doctrine, however, has been intended, and he who invokes it must show something more than incidental and indirect benefit. To entitle a third party, who may be benefited by the performance of a contract, to sue, there must have been an intention on the part of the contracting parties to secure some direct benefit to him, or there must be some privity and some obligation or duty from the promisor to the third party which will enable him to enforce the contract, or some equitable claim to the benefit resulting from the promise or the performance of the contract, and there must be some legal right on the part of the third party to adopt and claim the benefit of the promise or contract."

From this limitation it would seem to follow that where the third party has neither a legal nor an equitable claim against the promisee, and there is no privity between the

parties, nor any intention on the part of the promisee to benefit the third party, the promisor is not liable to such third party. Whether therefore the proposition be based upon the doctrine of subrogation or upon that of a promise for the benefit of a third party, in either event, there must be a legal right, founded upon some obligation of the promisee, in the third party, to adopt and claim the benefit of a contract between other parties.

Where then a mortgagee claims the benefit of and seeks to enforce an assumption, contained in a deed of conveyance of the mortgaged premises, against the grantee so as to hold him liable for any deficiency upon sale of the premises, it seems upon principle, that, in case the immediate grantor was under no obligation to pay the mortgage debt, the mortgagee ought at least be required to show in some way, other than by the mere words of assumption in the deed, that the assumption was intended for his benefit. The assumption being but an indemnity to the grantor, the mortgagee cannot look to the grantee for the payment of the debt, unless his grantor was personally liable for its payment.

It has been uniformly held in the State of New York, ever since the case of *King* v. *Whitely* was decided, as may be seen by reference to the decisions, that such a grantee is not liable to the mortgagee for a deficiency judgment, upon foreclosure and sale of the mortgaged premises, because of such an assumption clause in his deed, in case the immediate grantor was not personally liable, legally or equitably, to pay the mortgage.

In *Dunning* v. *Leavitt*, 85 N. Y. 30, where it was attempted to enforce a clause in a deed similar to the one in this case, it was said: "There is no justice in holding, that an action on such a promise is not subject to the equities between the original parties springing out of the transac-

tion or contract between them. It may be true that the promise cannot be released or discharged by the promisee, after the rights of the party for whose benefit it is said to have been made, have attached. But it would be contrary to justice or good sense to hold that one who comes in by what Judge Allen, in *Vroom* v. *Turner*, calls 'the privity of substitution,' should acquire a better right against the promisor than the promisee himself had."

So, in *Cashman* v. *Henry*, 55 How. Pr. Rep. 234, it was said: "As between the grantor, liable for the payment of a mortgage, and his grantee, who assumes, and agrees with him to pay it, the latter becomes, in equity, the principal debtor, the former a surety for the payment of a debt. The creditor, under the rules of subrogation, may resort to the rights and remedies available to the surety who is charged with an obligation or duty towards himself, and may enforce them in the same manner and to the same extent as the surety himself may do. But if the grantor be not chargeable with any liability to the holder of the mortgage, no relation of suretyship exists as between him and his grantee, and the rule of subrogation is, therefore, wholly inapplicable to any promise or undertaking made by the grantee in his favor."

In *Carter* v. *Holahan*, 92 N. Y. 498, it was observed: "The only ground upon which a liability has been sustained between others than the immediate parties to such a contract is that growing out of the relation of principal and surety, whether one becomes entitled to the benefit of any security received by the other from a party primarily liable for the payment of the debt. In order to avail himself of the benefit of such a security, the party must show that the person acquiring it owes some debt or obligation in respect to the subject of the covenant to the person claiming its benefits." *Garnsey* v. *Rogers*, 47 N. Y.

233; *Matter of Wilber* v. *Warren*, 104 N. Y. 192; *Lorillard* v. *Clyde*, 122 Id. 498; *Wager* v. *Link*, 134 Id. 122; *Durnherr* v. *Rall*, 135 Id. 219; *King* v. *Sullivan*, 52 N. Y. Supp. 130; *Trotter* v. *Hughes*, 12 N. Y. 74; *Pardee* v. *Treat*, 82 N. Y. 385; *Wager* v. *Link*, 150 N. Y. 549.

The same doctrine prevails in New Jersey, where this question has frequently been before the courts. In *Norwood* v. *DeHart*, 30 N. J. Eq. 412, the Chancellor said: "A mortgagee cannot avail himself of an assumption to pay his mortgage contained in a deed to a subsequent purchaser, unless the grantor was himself personally liable to pay the debt."

So, in *Mount* v. *VanNess*, 33 N. J. Eq. 262, it was observed: "The mere assumption to pay the mortgage on the land, if made by the grantee to the grantor, is at most an indemnity merely; and though, if the grantor be personally liable for the payment of the mortgage, the mortgagee may, in equity, pursue the grantee on his assumption, that, however, is because, and only because, the mortgagee is, in equity, entitled to the benefit of all collateral securities which his debtor has taken for the mortgage debt. And if the grantor is not personally liable for the mortgage debt, the mortgagee cannot look to the grantee, personally, at all; because the assumption is but an indemnity, and the grantor not being liable, the indemnity, is practically a mere nullity. Nor does the fact that the grantee obtained the benefit of the mortgage by having the amount allowed to him as part of the purchase money, make any difference. The purchase money was payable to his grantor, and the assumption is to him, and in his favor." *Wise* v. *Fuller* 29 N. J. Eq. 257; *Crowell* v. *Hospital of St. Barnabas*, 27 Id. 650; *Crowell* v. *Currier*, 27 Id. 152; *Parker* v. *Jenks*, 36 Id. 398.

This doctrine also prevails in various other states as shown by the following authorities: *Osborne* v. *Cabell*, 77 Va. 462; *Willard* v. *Warsham*, 76 Va. 392; *Morris* v. *Mix*, 4 Kan. Ct. App. 654; *New England Trust Co.* v. *Nash*, 5 Kan. Ct. App. 739; *Hicks* v. *Hamilton*, 144 Mo. 495; *Kansas City Sewer Pipe Co.* v. *Thompson*, 120 Mo. 218; *Houseman* v. *Trenton Water Co.*, 119 Mo. 304; *Insurance Co.* v. *Trenton Water Co.*, 42 Mo. App. 118; *Brown* v. *Stillman*, 43 Minn. 126; *Nelson* v. *Rogers*, 47 Minn. 103; *Jefferson* v. *Asch*, 53 Minn. 446; *Mellen* v. *Whipple*, 1 Gray 317; *Exchange Bank of St. Louis* v. *Rice*, 107 Mass. 37; *Pettee* v. *Peppard*, 120 Mass. 522; *Morrill* v. *Lane*, 136 Mass. 93; *Young Men's Christian Ass'n* v. *Croft*, 55 P. R. (Ore.) 439; *Brower Lumber Co.* v. *Miller*, 28 Ore. 565; *Brewer* v. *Maurer*, 38 Ohio St. 543; *Trimble* v. *Strother*, 25 Ohio St. 378; *Biddel* v. *Brizzolara*, 64 Cal. 354; *Chung Kee* v. *Davidson*, 73 Cal. 522; *Ward* v. *DeOca*, 120 Cal. 102; *Higman* v. *Stewart*, 38 Mich. 513; *Stewart* v. *Worden*, 42 Mich. 154; *Warren* v. *Batchelder*, 15 N. H. 129; *Meech* v. *Ensign*, 49 Conn. 191; *Bassett* v. *Bradley*, 48 Conn. 224; *Wright* v. *Terry*, 23 Fla. 160; *Ferris* v. *Carson Water Co.*, 16 Nev. 44.

In *Osborne* v. *Cabell*, *supra*, it was said: "If there is an unbroken chain of liability upon each purchaser to his immediate grantor, the court may, in the first instance, decree against the person ultimately bound. But, if as in the present case, there be nothing due from the ultimate purchaser to his immediate grantor, then neither the mortgagor nor mortgagee can recover anything."

In *Morris* v. *Mix*, *supra*, as appears from the syllabus, it was held: The liability of a grantee who assumes the payment of a mortgage on land conveyed to him depends upon the personal liability of his immediate grantor; if the

grantor is not so liable, the mortgagee cannot claim any deficiency from such grantee.

It was said in *Nelson* v. *Rogers, supra,* referring to a grantee's assumption in a deed that, "the clause operates only so far as the land is concerned, for it is only to that extent that the grantor is interested. Such a stipulation is presumed to be inserted primarily for the protection of the grantor. And it is only where payment of the debt as a personal obligation is necessary to his protection that the clause is to be construed as intended for the benefit of the mortgagee beyond his right of recourse to the land. Otherwise the obligation of the grantee to the mortgagee would be greater than his obligation to the grantor, his promisee."

The Supreme Court of Massachusetts, in *Mellen* v. *Whipple, supra,* where a grantee had accepted a deed containing a clause to assume and cancel a mortgage, said: "There was no privity of contract between the plaintiff's intestate and the defendant, nor did the consideration of the defendant's promise move from her intestate. Rollins sold only an equity of redemption to the defendant, leaving the estate in fee in the mortgagee. The stipulation in the deed of the equity, that the defendant should pay the mortgage notes, was a matter exclusively between the two parties to that deed, and is nothing more than the law would require of the defendant, in order that he might derive any benefit from his purchase of the equity."

So in *Ward* v. *De Oca, supra,* it was observed: "It is true that in certain cases a mortgagee in an action to foreclose his mortgage may recover a deficiency judgment directly against the grantee of the mortgagor; but that right 'springs from a well-known rule in equity that a creditor is entitled to the benefit of any obligations or

securities given by his debtor to one who has become surety of such debtor for the payment of the debt.' (*Hopkins* v. *Warner*, 109 Cal. 136, and. cases there cited.) This principle, with its limitations, is expressed in *Williams* v. *Naftzger*, 103 Cal. 438, as follows: 'An agreement on the part of the grantee to pay and discharge a mortgage debt on the granted premises, for which his grantor is liable, renders the grantee liable therefor to the mortgagee.' "

The same doctrine has been announced and approved by the Supreme Court of the United States.

*Keller* v. *Ashford*, 133 U. S. 610; *Willard* v. *Wood*, 135 U. S. 309; *National Bank* v. *Grand Lodge*, 98 U. S. 123.

Nor does it make any difference if payments are made on the mortgage by the grantee. On this point, Mr. Justice GRAY, in *Willard* v. *Wood, supra,* said: "The payments made by the grantee, and accepted by the mortgagee, on account of the mortgage debt, were made pursuant to the grantee's contract with the mortgagor, and did not create, or warrant to be inferred, a new contract between the grantee and the mortgagee."

The rule has been recognized and stated by text writers. In Wiltsie on Mortgage Foreclosure, sec. 227, it is said: " A grantee of mortgaged premises, who purchases subject to a mortgage which he assumes and agrees to pay, will not be held liable for a deficiency arising on a foreclosure and sale, unless his grantor was also personally liable, legally or equitably, for the payment of the mortgage. 'It is well settled that to make a promise of this nature effective, it must be made by a person personally liable, legally or equitably, for the mortgage debt, and if there is a break anywhere in the chain of liability, all the subsequent promises are without obligation.' "

Likewise, in the Encyclopedia of Pleading and Practice, Vol. 9, p. 469, an admirable work of present date, referring to this doctrine, it is said: "It is the prevailing rule that even where the purchaser has assumed the mortgage, he will not be liable for the debt if his grantor was not so liable, since the assumption cannot in such case be a part of the consideration for the purchase." 15 Am. & Eng. Ency. of Law, p. 840; 1 Jones on Mortgages, sec. 760; 1 Beach on Modern Contracts, secs. 199–202.

My conclusion is that the rule which exempts a grantee, who has merely in a deed of conveyance assumed and agreed to pay the mortgage, in case his immediate grantor is not personally liable for the payment of the mortgage debt, from liability to the mortgagee, or owner of the mortgage, is not only founded in reason and principle, but is sustained by an overwhelming weight of authority. I do not intend to hold, however, that the grantee of mortgaged premises, whose grantor is under no personal obligation to pay the mortgage debt, cannot render himself liable to the mortgagee for a deficiency judgment upon foreclosure and sale, by accepting a deed containing an assumption clause with knowledge of such contents, and which clause contains apt words showing that the grantor intended to bestow a benefit upon the mortgagee. The rule cannot be thus extended, for, doubtless, a grantor may direct the payment of the purchase price as he chooses, and may, if he so wishes, contract with a grantee that the latter will pay a certain sum to a stranger, or a mortgagee, or any person upon whom the grantee chooses to confer a benefit, and in such cases the beneficiary may enforce the contract. Where, however, as in the case at bar, the grantor is not personally liable, the assumption clause ought to be construed as a mere indemnity to the grantor, unless there is something to show a different intention by the contracting parties.

In this case there appears to be nothing which indicates any other intention, on the part of the grantor, than that of indemnity to himself. There are no words in the deed, nor any evidence of facts or circumstances, which indicate that the grantor had any interest in protecting the mortgagee to whom he was under no personal obligation. Doubtless, in general, the greatest interest a grantor has is in affecting a sale of the premises, and it cannot be assumed that he would hazard the chances of such a sale by insisting on that which would not benefit him. The circumstances of this case, disclose no intention to benefit the mortgagee, and therefore he is not entitled to a deficiency judgment against the promisor, the assumption in the deed being intended merely to indemnify the promisee. If the intention of the contracting parties had been otherwise, the respondent could easily have shown it, by placing the vendor, McDonald, upon the stand and interrogating him upon the subject. This he failed to do although, under the great weight of authority, the burden was upon him to show that the contract was intended for his benefit, or that the vendor was under some legal obligation to him respecting the debt. The respondent not having done this, why should the appellate court assume that as a fact of which there is no proof? To so assume is a violation of the very principles which this court announced and applied in its decisions hereinbefore cited.

In the opinion of the majority it is said: "On November 1, 1896, Belnap acknowledged said mortgage in writing and arranged to pay the same." And again, referring to the appellant they say: "When asked by the holder to pay the mortgage, he wrote to plaintiff agreeing to pay it." They admit that the testimony is conflicting but say "there is evidence tending to sustain" these statements. The only evidence, upon which such statements

could be based at all, is that concerning a letter from the appellant which, just before the trial, the respondent, it appears, claimed to have in his possession, and which, at the trial, he testified was destroyed by his wife; and then introduced secondary evidence as to its contents. Respecting the contents of that letter, the respondent testified: "Belnap stated he would be back the first of November and pay me." And on cross-examination the witness said: "When I wrote back to Belnap I quoted his letter correctly."

The witness, Mrs. McKay, wife of respondent, respecting the contents of the letter, testified: "It stated, as near as I can remember, that he would be in about the first of November, 1896, and would see Mr. McKay and would pay him. That is as near as I can remember," and on cross-examination she also stated that, what Belnap said in the letter about payment was quoted correctly in their answer.

The respondent's son testified: "As near as I can recollect, he stated on the back of the letter that he would be in sometime in November, and he would settle with my father."

These witnesses, as will be noticed, testified merely from their recollection as to the contents of a letter, which, according to their testimony, had been burned months previously, and said, in effect, that the letter stated that Belnap "would pay," or, according to the last witness "would settle" with the respondent.

Appellant Belnap testified that he said in the letter in question that he would be home sometime about the first of November, and would see respondent "about Ward's note, or regards Ward's note" and denied that he ever "in writing promised to pay McKay those notes." His testimony is corroborated by the affidavits, used on

motion for new trial, of his wife and daughter, who were present when the letter was written. In their affidavits they say that nowhere in the "letter was there any promise on his part to pay Mr. McKay either, or any of the notes." The testimony of appellant Belnap is also corroborated by the answer of McKay to the letter in question, which answer was afterwards introduced in evidence, and on this point, reads: "You said you would see me in November in regard to the money, which is all right." This, as will be seen from the testimony of both Mr. McKay and his wife, was "correctly quoted" by them from Belnap's letter, and yet there is not a word about payment of the "Ward notes" or mortgage in the part of the answer quoted or anywhere in the answer. It is difficult to see how it can be claimed that such evidence even tends to show a promise to pay the mortgage. To hold that Belnap did promise to pay the debt in his letter would be to assume not only that he, his wife and daughter, but also the respondent and wife, willfully stated under oath that which was not true, for the former testified positively that the burned letter contained no promise to pay, while the latter testified that what was said in the letter was correctly quoted in their answer thereto, in which no such promise appears.

It is true McKay and wife also made statements that Balnap said in the letter he "would pay" but those statements were made from memory merely, before the answer was introduced in evidence, and evidently with no intention of stating an untruth under oath, and therefore should not be given the effect, under the circumstances of charging them, as well as the witnesses for the defense, with perjury, especially when the evidence on both sides can be reconciled on the reasonable hypothesis, which is doubtless consistent with truth, that there was no promise to pay in

the letter, and that the statements seemingly to the contrary were the result of a want of accurate recollection. This is certainly the most charitable view in a case where all the evidence, taken together, indicates that all the parties are reputable citizens, and is also in harmony with the purpose for which, the evidence referred to, was introduced. As appears from the record, that testimony was doubtless offered, in connection with other evidence respecting an extension of time for payment of the debt, for the sole purpose of avoiding the effect of the statute of limitations, and not to show a promise of Belnap to pay a deficiency judgment. This is also clearly indicated by the arguments of counsel, in their briefs, and by the opinion of the court below, which is printed in respondent's brief, where it is said: "In this case there is no question about the effect that would be produced if the action was brought against the mortgaged premises upon a barred indebtedness; because it is conceded, that if there has been no legal extension of the note, that the note is barred, and the authorities are overwhelming that under such circumstances the mortgage is also barred."

And after finding that there was an extension of time, the trial court said: "It is immaterial and of no consequence to the grantee, that his grantor may or may not be personally liable or bound for the payment of the mortgage debt.   *   *   *   The effect of the recital in the deed was to charge the land with the liens as effectually as if Belnap had himself executed a mortgage of that purport."

It is clear that the court below considered merely the assumption contained in the deed.

Under such circumstances as are disclosed by this record, how can the majority say that "the appellant should be held liable to pay the balance of the debt," regardless of the assumption in the deed.

In my judgment this is manifestly a case where the mortgagee is not entitled to a deficiency judgment against the vendee, although the latter accepted a deed with an assumption clause. The mortgagee never contracted with a view to such additional security when he loaned his money. When he made his contract he was satisfied with the security which was then offered and which he then accepted. He still has the identical security which, so far as appears from the record, has never been impaired by any act of the last vendor or vendee. He still has the land, and, as the court found, the personal liability of the mortgagor, for he conveyed simply subject to the mortgage without shifting the personal obligation, and in addition to all this, it is now said to be equitable that he should have another and entirely independent security, for which he never gave the slightest consideration, coming from a person of whom he never thought when he made his contract, possibly, of whom he had never heard, and with whom he had no contractual relations whatever. This, too, without showing that the mere naked covenant in the deed was placed there with the intention of the vendor, who was a stranger and under no obligations, legally or equitably, to benefit him.

While the mortgagee, who does not pretend to have a claim against the vendor, and without any consideration moving from him, thus receives the additional security, the unfortunate vendee loses not only every dollar which he had actually paid the vendor and mortgagee, and the land which he purchased, but also, in addition thereto, has a deficiency judgment entered against him. My brethren seem to have a process of reasoning by which they arrive at and produce such a result, but I seriously doubt its soundness. This in effect, puts the vendee in the absurd position of a guarantor of a debt of the ven-

dor which the vendor did not owe, for it is not established
that the purpose of the contracting parties was to confer a
direct and independent benefit upon the mortgagee, in
whom neither of them had any interest, and to whom
neither of them owed anything as a personal obligation.

I am of the opinion that the case ought to have been
remanded, with directions to the court below to modify
and set aside so much of the judgment as directs the ven-
dee to pay the deficiency, and therefore I dissent.

BARTCH, C. J.