MARY E. BROWN, Respondent, *v.* CHARLES B. MARKLAND, Appellant.

CONTRACT — EVIDENCE — RIGHT OF ACTION — APPEAL — HARMLESS ERROR.

1. An instrument drawn up at the time a written contract is entered into, but which is expressly stricken out, is not admissible in evidence as constituting a part of the contract.

2. *Id.—Parol Evidence.*

Whenever the terms of a contract are susceptible of more than one interpretation, or latent ambiguity arises, or the extent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of making the contract, and to determine the object on which it was designed to operate.

3. *Right of Action—Parties.*

Where a promise or contract has been made between two parties for the benefit of a third party, an action will lie thereon at the instance and in the name of the party to be benefited, although the promise or contract was made without his knowledge, and without any consideration moving from him.

4. *Evidence—Third Party.*

A conversation had between a third party and defendant, respecting a claim of the third party against the mine out of which defendant's obligation to plaintiff arose, is immaterial, and not admissible in evidence.

5. *Reversal—Errors must be Prejudicial.*

A reversal will not be granted upon an error committed in the introduction of evidence, when the error does not appear to be prejudicial to the rights of the appellant.

(No. 892.　Decided March 2, 1898.)

Appeal from the Third district court, Tooele county. A. N. Cherry, *Judge.*

Action by Mary E. Brown against Charles B. Markland on a contract. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Bennett, Harkness, Howat, Bradley & Richards,* for appellant.

*Brown & Henderson,* for respondent.

BARTCH, J.:

This is an action upon a contract, which, the plaintiff claims, was made for the benefit of herself and others, although she was not a party thereto. It appears that on April 30, 1894, William A. Frailey and associates, owners of a mine, entered into a written contract with the defendant, whereby, for a certain consideration, they agreed to convey their mine to him free of incumbrance, except a mortgage lien, and certain claims of persons for labor performed and materials furnished at the mine, which mortgage and claims, it is contended, the defend-assumed and agreed to pay. The plaintiff maintains she was one of these claimants, and, at the trial, the jury returned a verdict in her favor for the amount of her claim, and the court entered judgment thereon. This appeal is from the judgment.

Counsel for the appellant insist that Exhibit A, an instrument, which the appellant drew up, but which was never signed by the parties to the transaction, constituted a part of the contract of sale, and that the court erred in excluding it from the evidence. Respecting Exhibit A, the witness Richard Gundry, one of the owners of the mine, testified that Markland drew it up; that it was never perfected or executed; and that Exhibit 1, the contract read to the jury, was the only agreement between the grantors and grantee. Another witness testified that

the owners, at the time of winding up the transaction, objected to the exhibit in dispute; that it was not a part of the agreement, and was not to be considered so; and that Markland, in the presence of the witness, said: "We'll strike this Exhibit A out. We don't care anything about it." On cross-examination, as a witness in his own behalf, Markland himself said: "Exhibit A was stricken out." From this, and other testimony in the record, it is apparent that the exhibit in question constituted no part of the contract, and was properly rejected.

The next question to be determined is, what were the rights of the respondent under the contract of sale? By the terms of that instrument, the owners bound themselves to convey the property to Markland "free and clear of all liens, claims, clouds, and incumbrances whatsoever, except a certain mortgage for about $3,700, and interest thereon, given on said property, *  *  * and except for the claims of persons who have performed labor upon or furnished materials for us in or on said property, and which outstanding claims do not exceed in the aggregate the sum of $2,500," the conveyance to be made and delivered on or before May 10, 1894. The mortgage indebtedness and claims Markland assumed and agreed to pay, as stipulated in the writing signed by him and the owners. The deed executed and delivered in pursuance of the agreement bears date May 7, 1894. There is no question that the amount of all the claims, including the respondent's, is less than $2,500. At the trial the court permitted evidence to be introduced to show what the intentions of the parties to the transaction were, at the time of the making of the contract of sale, respecting the assumption of the payment of respondent's claim by the appellant. This was objected to as incompetent, on the ground that it was sought thereby to con-

tradict the terms of a written agreement. Under the circumstances of this case, we do not think the objection well taken. One of the issues was whether respondent's claim was one to be paid by virtue of the written contract. It had appeared in evidence that she had furnished money and supplies for the amount of her claim to the owners of the mine, with which to operate it. The contract does not appear to be very specific and certain as to such a claim. It might have been intended to be included within its terms and it might not. Just what the intention of the parties respecting it was by using the expression, "claims of persons who have performed labor upon or furnished material for us in or on said property," must depend upon the surrounding circumstances. In the light of what was said and done at the time of a transaction, of the conduct of the parties thereafter, and of the interpretation which they themselves have placed upon it, a court is more likely to arrive at the real meaning and intent of the parties when the terms employed in an instrument are indefinite or ambiguous. Such evidence is not received to vary the language of the writing, but to explain what was meant by its use. It serves to explain the subject-matter, and enables the court to determine what the instrument referred to and embraced. Its object is to elucidate the meaning of the parties. Therefore, in this case, for the purpose of showing the intended meaning of the expression here under consideration, and to ascertain whether or not the contracting parties intended, by making use of that language, to include the respondent's claim, as a part of the debt to be assumed, parol evidence of what was said and done by them respecting the claim, at the time of the execution of the agreement, was admissible. Where the terms employed in a written instrument are clear and unequivocal,

import what the legal obligation is, and are not uncertain as to the object and intent of the contract, parol evidence is not admissible to controvert them; but whenever the terms are susceptible of more than one interpretation, or a latent ambiguity arises, or the extent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of making the contract, and to determine the object on which it was designed to operate. In Browne, Par. Ev. § 54, the author says: "The conversations and acts of the parties to a contract, at and about the time of the making of the contract, as well as subsequent to the making of the contract, are admissible in evidence to show what sense the parties attached to any term or phrase used in the contract, which is in itself susceptible of more than one interpretation, or which, viewed in the light of the evidence explanatory of the subject-matter, the relations of the parties, and the circumstances, may reasonably be susceptible of more than one interpretation." See, also, Id. §§ 53, 55; 1 Greenl. Ev. § 277; 2 Whart. Ev. § 940; *Bartels* v. *Brain*, 13 Utah 162; *Swett* v. *Shumway*, 102 Mass. 365; *Hart* v. *Hammett*, 18 Vt. 127; *Barrett* v. *Stow*, 15 Ill. 423; *Noyes* v. *Canfield*, 27 Vt. 79; *Goodrich* v. *Stevens*, 5 Lans. 230; *Stoops* v. *Smith*, 100 Mass. 63; *Field* v. *Munson*, 47 N. Y. 221; *Bradley* v. *Steam Packet Co.*, 13 Pet. 89; *Reed* v. *Insurance Co.*, 95 U S. 23.

In the case at bar, the witness Richard Gundry, one of the grantors, testified that at the time of the transaction the respondent, Mrs. Brown, had a claim of about $380 against the mine; that at that time the grantee was informed by him that she was one of the claimants; and also that her claim was a part of the debt against the mine. The witness Frailey, another of the grantors, testi-

fied, it appears without objection, that it was a part of
the agreement that Markland should pay and settle Mrs.
Brown's claim.  Mrs. Brown testified, in part, concern-
ing what was said between her and Markland, in April,
1894, as follows: "I said to him: 'I am perfectly willing
to transfer this account to you if you will assume the
debt.' He said: 'I can't do anything until I see the own-
ers, but when I have seen the owners I will let you know.'
After he had made arrangements—I don't know what ar-
rangements—with the owners, he came back to me next
morning, and said hurriedly: 'I have made satisfactory
arrangements with the owners.  I assume your bill, and I
will pay it, with interest.' " The witness also testified
that he said he would pay it "in sixty days." The appel-
lant testified concerning a conversation with Mrs. Brown,
respecting payment, in the latter part of April, 1894, as
follows: "She asked me about that claim of hers, and I
said, if things keep looking as they are now (because
they had struck what seemed to be a body of galena ore
in the mine), that it wouldn't be sixty days." The witness
further stated that, in a conversation with Mrs. Brown,
he told her the first money he got out of the mine he
"would pay towards applying on those claims out there."
This, and other evidence of a similar character, was ad-
missible, in accordance with the principle above stated,
and is quite sufficient to convince the mind that the terms
employed in the agreement by the contracting parties
were designed by them to include the respondent's claim.
The contract thus made, for a valuable consideration, in-
ured to her benefit, and the grantee of the premises be-
came the promisor.  She thereafter had a right to look
to him for payment of her claim, under the rule that
"where a promise or contract has been made between two
parties for the benefit of a third, an action will lie thereon

at the instance and in the name of the party to be benefit-ed, although the promise or contract was made without his knowledge, and without any consideration moving from him." *Montgomery v. Spencer*, 15 Utah 495; *Thompson v. Cheesman*, 15 Utah 43; *Clark v. Fisk*, 9 Utah 94; 1 Pars. Cont., p. 467.

It is also insisted that the court erred in permitting the witness Thomas to testify to a conversation he said he had with the appellant, concerning a claim the witness had against the mine. This evidence was clearly imma-terial, and ought to have been excluded; but, under the circumstances of this case, we do not regard its admission as reversible error. It did not prejudice the rights of the appellant, if the respondent was entitled to recover, and we think she was, by reason of the contract between the appellant and the owners of the mine. We are also of the opinion that the instructions of the court, under the facts of this case, although subject to criticism, were not prejudicial to the appellant. We find no reversible error in the record. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.