Syllabus.

# Richmond.

## SHENANDOAH LAND AND ANTHRACITE COAL CO. v. CLARKE.

### November 22, 1906.

### Absent, Buchanan, J.

1. EQUITY—*Bill of Discovery—Responsive Answer—Effect as Evidence.*—If a bill calls for an answer under oath from the defendant, such answer when made, insofar as it it responsive to the bill, is admissible in favor of the defendant, and is conclusive until it is overcome by two witnesses, or by one witness and corroborating circumstances.

2. WRITTEN CONTRACTS—*Parol Evidence—Surrounding Circumstances—Practical Construction.*—Where a written contract is obscure in its meaning, evidence of what was said and done at the time of its execution is competent, not to add to or change it, but to explain it. So also evidence of the acts of the parties under such a contract may be received to show intent.

3. WRITTEN CONTRACTS—*Parol Evidence—Surrounding Circumstances.*—The fundamental rule in the construction of an agreement is to ascertain the intention of the parties thereto; and, in such construction, courts look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the lights enjoyed by the parties when the contract was executed, and to that end they may place themselves in the same situation occupied by the parties, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described.

4. VENDOR AND PURCHASER—*Reservation of Growing Timber—Case in Judgment.*—A grantor in a deed conveying a boundary of mountain land supposed by the grantee to be underlaid with minerals, reserves to himself and assigns "all the timber upon the said tract, with the privilege of removing the same at such time as may suit his convenience." Two days later, the grantor, without

Opinion.

consideration, indorses on the deed the following: "In the fore-going deed there is reserved to the grantor all of the timber on the lands conveyed, with the privilege of removing the same. The extent of such reservation is only intended to allow the grantor the privilege of cutting and removing such timber from the said land as he may want from time to time without let or hindrance from the grantee; but it is by no means intended to prevent said grantee or his assigns also to cut and use whatso-ever timber he may want from time to time." From the time of the grant to the institution of this suit—about fifty-three years—the grantor has cut and removed timber and bark from the land without objection from the grantee. The sole purpose of the grantee was the development of minerals under the land, and he never contemplated cutting or removing the timber, nor has he ever attempted to cut and use any of the timber, nor has he attempted to open and operate any mines under the land, and has abandoned that idea. The purpose of the indorsement on the deed, as appears from the evidence, was to permit the grantee to use enough of the timber on the land to prop up his mines in taking out coal, or to show the coal with a view of sell-ing it.

*Held:* The grantor has the right to cut and remove from the land such of the timber as he may see fit, and cannot be enjoined therefrom by the grantee or those claiming under him.

Appeal from a decree in chancery of the Circuit Court of Augusta county. Decree for defendant. Complainant ap-peals.

*Affirmed.*

The opinion states the case.

*Bumgardner & Bumgardner,* for the appellant.

*Patrick & Gordon,* for the appellee.

Cardwell, J., delivered the opinion of the Court.

On the 27th day of September, 1853, James T. Clarke and wife made, executed and delivered to one Anastatius Nicholas their deed conveying two adjacent tracts of mountain land, set-ting out the metes and bounds thereof, situated in Augusta

county, Virginia. A reservation was expressed in this deed in the words following: "And the said Clarke and wife hereby reserve for themselves or assigns all of the timber upon the said tract, with the privilege of removing the same at such time as may suit their convenience." On the 29th day of September, 1853, a writing was made on this deed below the signatures thereto, which was signed and sealed by Clarke and expressed in the words and figures following:

"In the foregoing deed there is reserved to the grantors all of the timber on the lands conveyed with the privilege of removing the same. The extent of such reservation is only intended to allow the said Clarke the privilege of cutting and removing such timber from the said lands as he may want from time to time without let or hindrance from said Nicholas, but is by no means intended to prevent said Nicholas or his assigns also to cut and use whatsoever timber he may want from time to time. Witness the following signature and seal September 29, 1853.

"JAMES T. CLARKE.    (Seal.)"

By deed dated March 17, 1875, Anastatius Nicholas conveyed the lands above mentioned and the appurtenances to the Shenandoah Land and Anthracite Coal Company, together with other lands in the same locality; and on the 21st day of April, 1906, the Shenandoah Land and Anthracite Coal Company filed its bill in the Circuit Court of Augusta county against James T. Clarke, praying an injunction restraining Clarke, his agents, etc., from cutting timber standing and growing upon the lands in question, and from removing any timber cut by Clarke upon said land, and from selling or disposing of any of said timber so cut and removed. Upon this bill a temporary injunction was awarded, in accordance with the prayer thereof, and subsequently the cause was heard upon the bill of complaint, the answer of James T. Clarke thereto and certain affidavits taken and filed on behalf of Clarke, and depositions taken

on behalf of the plaintiff; whereupon the Circuit Court dissolved the temporary injunction theretofore awarded and dismissed the complainant's bill.    From this decree the Shenandoah Land and Anthracite Coal Company obtained this appeal.

The effect of the decree appealed from is, as appellant claims, that the appellee, Clarke, is the absolute owner of all the timber on the lands in question, and that appellant has no interest in or right to this timber, or any part of it.

The first error assigned is that the court overruled the exception taken to the answer of Clarke filed in the cause, and refused to strike out and expunge from the answer the portion thereof excepted to.

The bill of appellant called for an answer from Clarke to each and every allegation thereof, on oath, as fully and to the same extent as if he were directly and particularly interrogated as to each allegation; and the answer of appellee was accordingly made under oath, admitting the execution of the deed of September 27, 1853, filed with the bill, and also the indorsement thereon dated September 29, 1853, and sets out fully the facts and circumstances as they existed at the time of the execution of these two writings from the standpoint of appellee.

As to the objection that the answer is sworn to, it need only be said that the bill called for an answer under oath, and therefore the answer was admissible and conclusive in so far as it was responsive to the bill until it was overcome by the testimany of two witnesses, or by one witness and corroborative circumstances.    Appellant might have waived oath to the answer, but this it did not see fit to do, and there was no ground upon which the answer or any part of it could be excluded merely because it was under oath.

Nor should the exception thereto, on the ground that the answer was not responsive to the bill, have been sustained, as the matters set up in the answer were clearly relevant to the issues presented in the bill, and responsive thereto.

The answer, after setting out that the lands conveyed by the

deed of September 27, 1853, are rough mountain lands, of which the principal value is the timber and such minerals as they contain; that no minerals of any value have ever been discovered or are known to exist under said lands, although more or less extensive experiments have been made at various times since 1853; that there is valuable timber growing on said lands, which has recently become more valuable by reason of the construction of the Chesapeake-Western Railroad; that respondent had made arrangements to cut and remove the timber from said lands because the growing timber thereon belonged to him under the true intent, meaning and the proper construction of the deed from him to Nicholas, and, denying that the addendum to the deed was made before the actual delivery thereof, states: "The facts about the transaction are that Anastatius Nicholas, who was from Vermont, but did business in New York City, conceived the idea that there was anthracite coal and iron ore on your respondent's and other adjacent lands, and he desired to acquire the minerals, intending to form a company, develop the minerals, and either operate the mines or sell at a large advance. Your respondent had no great faith in the minerals, but did think that the timber might sometime become valuable. He, therefore, contracted to sell said Nicholas the land and reserve the timber, and the deed was drawn up, signed and delivered in exact accordance with the contract, and the purchase money was paid. It then occurred to said Nicholas that he had no timber for use in the mines, or even to open up and show the vein of coal, and he asked your respondent to allow him to use such of the timber as he might need to prop up the roof of such openings as he might make to show the vein of coal. This your respondent agreed to, and the indorsement was made on the deed to carry this understanding into effect. There was no consideration given for it, and it was not intended to deprive your respondent of the valuable timber which he had not sold. The indorsement was inartificially drawn and badly expressed, but was understood by said Nicholas, who stated to

your respondent and to others his understanding of it to be as stated above." It is clear that this part of the answer objected to is merely explanatory of the general denial of the equities set up in the bill, and was therefore relevant to the issues presented in the bill and responsive to the equities asserted.

Concerning the timber upon the lands conveyed in the deed of September 27, 1853, the deed is not susceptible of any other construction than that by it the absolute right to all of the timber upon the lands was reserved to the grantor, Clarke, and it is by reason only of the "addendum" to this deed that any difficulty is encountered in reaching a satisfactory conclusion as to the meaning and import of the language employed by the parties contracting. According to the contention of appellant, the language of the "addendum" is to be construed as giving to Nicholas and his assigns the absolute ownership of the timber upon the lands. Plainly this contention cannot be sustained, for if the words "the right to cut and use" timber gave Nicholas the absolute ownership of it, then the words preceding, which reserved to the grantors all the timber on the lands conveyed "with the privilege of removing the same," must necessarily have the same construction, the result being that both the grantors and the grantee in the deed thereby reserved or acquired an absolute ownership of the timber, with the right to the former to "cut and remove" and to the latter the right to "cut and use." It is impossible that both could own an absolute right to the timber. It is immaterial, we think, whether the deed and the "addendum" be treated as one paper or separate. Under the deed the whole of the timber is unmistakably reserved to the appellee, and there is nothing in the "addendum" which required him to surrender the whole of it to Nicholas and his assigns; on the contrary, it is distinctly stipulated that he may cut and remove as much of the timber as he might want from time to time, without let or hindrance from Nicholas, who was given the privilege merely of cutting and using whatever timber he might want from time to time; but the exercise of

this privilege was in no way to hinder appellee from cutting and removing as much of the timber as he might want from time to time. It would, therefore, be illogical to say that this "addendum" is to be construed as giving Nicholas' assignee the right to enjoin appellee from cutting and removing such of the timber as he may want from time to time, for in that case there would be none reserved by the plain terms of the deed and the stipulation in the "addendum" for him to cut and remove. To read the "addendum" separately, the ambiguity is patent and renders the instrument inoperative and void, as the two clauses therein—the one recognizing in appellee the right to "cut and remove" the timber, and the other the right or privilege of Nicholas to "cut and use" the timber—are destructive of each other, and leaves the reservation of the timber in the deed itself unaffected. To consider the ambiguity as latent, however, the same result must follow, for by no rational construction to be given this "addendum" could appellee be deprived of the right to "remove" the timber from the land as he might desire to do from time to time. If it was intended by the parties to confer upon Nicholas the right to all the timber, or such right therein as would exclude appellee from the right to cut and remove such timber as he might want from time to time, the language employed is inapt and ineffectual to accomplish that purpose, and other more apt and effectual language could and doubt less would have been used.

The rule that parol evidence is not admissible to alter the terms of a written instrument or to add thereto does not exclude evidence going to explain the instrument, where the language employed is of equivocal import.

"Where a written contract is obscure in its meaning, evidence of what was said and done at the time of its execution is competent, not to add to or change it, but to explain it." *Knick* v. *Knick*, 75 Va. 12; *Richardson* v. *The Bank*, 94 Va. 136, 26 S. E. 413.

"If the meaning of an instrument be doubtful, evidence of

the acts of the parties under it may be received to show intent." *Glenn* v. *Augusta Perpetual, &c., Co.,* 99 Va. 695, 40 S. E. 25, and authorities cited.

To ascertain the intent of the parties is the fundamental rule in the construction of an agreement; and in such construction courts look to the language employed, the subject-matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and to that end they are entitled to place themselves in the same situation which the parties who made the contract occupied, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described. *Talbott* v. *R. & D. R. Co.,* 31 Gratt. 685.

Considering the language employed in the "addendum" to the deed in question, in the light of the well established rules adverted to and the proof in the record, the construction of it claimed by appellee is fully sustained. For about fifty-three years prior to the institution of this suit appellee cut and removed tan-bark and timber from these lands, according to the very terms of the deed of September 27, 1853, without hindrance on the part of Nicholas or anyone claiming under him, no question being raised by anyone at any time as to appellee's right to do so. It further appears that it was the sole purpose of Nicholas, and appellant who claims under him, to develop such minerals as might be found upon the lands in question, and that neither ever contemplated cutting and removing from the lands the timber thereon reserved in the deed to appellee. It further appears that neither Nicholas nor the appellant, during the period from the date of the deed to Nicholas in 1853 to the institution of this suit, ever attempted to cut and use any of this timber, nor have they, or either of them, during that period attempted to open and operate any mines under the lands, but, on the contrary, their course with reference thereto has been such as to warrant the conclusion that they had aban-

doned all idea of mining any coal or other minerals in the lands, or of there being coal or other minerals therein to mine. Appellant now concedes in its bill that there is nothing in the lands to be mined, and it is only at this late day that it has conceived the idea that under the "addendum" to the deed to Nicholas it owns an interest in the timber thereon and is entitled to enjoin appellee from the further enjoyment of the right to cut and remove the whole of it at his convenience, expressly reserved to him in the deed.

The facts and circumstances shown in the record clearly sustain the contentions of appellee—(1) That the addendum to the deed was made after the execution and delivery thereof, and without consideration; (2) that it was made for the purpose only of conferring upon Nicholas the right or privilege of using enough of the timber upon the lands conveyed as he might need to prop up his mines in taking out any coal he might find and want to market or show, with the view of selling his purchase of the lands at an advance, it being the purpose of Nicholas to either mine and market the coal he believed he could find in the lands, or to sell the lands, together with other lands in the same locality, with the right to mine coal or other minerals therein, for an advanced price; (3) that Nicholas never intended to purchase, nor ever considered that he had purchased, the timber on the lands conveyed by him to appellee, or any interest therein which he could assert in hindrance of appellee in cutting and removing the timber at his convenience; and (4) that neither Nicholas nor appellant ever conceived the idea that the "addendum" in question conferred upon Nicholas any interest in the timber other than the mere privilege of using such of it as Nicholas might want to use in propping up openings in the lands to take out coal found therein, or to show the same, until long after all expectation of finding coal or other minerals in the lands had been abandoned, the lands regarded of little or no worth, and the timber had become valuable only by reason of the construction of a railroad to the

vicinity of the land, affording transportation for timber from that region to market.

In our view of the case the occasion has never arisen for Nicholas or his assignee, appellant, to exercise the right or privilege conferred upon the former by the "addendum" to the deed of September 27, 1853, and that by the concession of appellant in its bill, which agrees fully with the proof in the record, the occasion can never arise for the exercise of such right or privilege; therefore it would be manifestly unjust and inequitable to grant the relief prayed by appellant in this case.

It follows that the decree appealed from is without error, and should be affirmed.

*Affirmed.*