BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1911.

WILLIAM GEISMANN et al., Respondents, v. FREDERICK TRISH et al., Appellants.

St. Louis Court of Appeals, February 6, 1912.

1. **EASEMENTS: Location: Indefinite Reservation: Parol Evidence.** While a right of way could not be located from the mere reading of a deed to a lot containing a reservation that "ten feet of said lot is reserved as a right of way," yet parol evidence of the situation and conduct of the parties and the state and condition of the premises would be admissible, to ascertain the intention of the parties in using such language.

2. —————: —————: —————: **Locating by Use.** Where a reservation of a right of way in a deed conveying land is not sufficiently definite in its description to permit of the location of the way, and resort is had to parol evidence, which shows that the way was fixed by buildings or permanent enclosures at the time the deed was executed, such reservation will be construed to reserve a way as thus located, fixed and defined, especially where, for a long time, the grantee of the easement and those claiming under him used such way with the acquiescence of the grantor.

3. —————: —————: —————: —————: **Facts Stated.** The owner of a group of contiguous lots erected fences, sheds and other outhouses along a line ten feet distant from the rear end of such lots. He subsequently conveyed the lots, reserving a right of way as follows: "Ten feet of said lot being reserved as a right of way." The several grantees used the alleyway, which was fixed by the fences, sheds and other outhouses erected ten feet distant from the rear end of the lots, for fourteen or fifteen

years, with only a few minutes' interruption at the end of the ninth year. In an action by all of these grantees, except defendant, to enjoin the latter from maintaining a fence across this alleyway, adjacent to his lot, *held*, that the language used in the deeds should be construed as a reservation of a way as thus located, fixed, defined and used, and hence a judgment for plaintiffs was proper.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

AFFIRMED.

*Chas. A. Smith* and *Wm. McNamee* for appellant.

(1) The four essential facts for the plaintiffs to prove in order to sustain their claim to an easement by prescription are: First, user for the prescribed period; second, that the user was adverse; third, that it was under a claim of right; and fourth, notice to the owner of the user and of its character and the claim of right. 188 Mo. 704. Again plaintiff was not entitled to show under his petition that there was a user for the reason that there was no allegation that the strip was so used and no amendment of the petition to conform to any such fact, if proved, was made by the plaintiffs on this theory of the case. (2) On the other theory of the case, did the eastern ten feet of the Trish lot become subject to this easement by the deed from Humann to Corcoran and through whom this defendant claimed title? We contend it did not. The language attempting to create the reservation is as follows: "Ten feet of said lot being reserved as a right way." We contend that it did not, for the reason that the language by which a reservation was intended to be created is too vague and indefinite, not describing what particular ten feet was intended to be reserved and therefore failed to reserve any, the rule being, "If the subject of the grant cannot be ascertained by its description, the grant becomes void from

the necessity of the case.'' 3 Washburn, sec. 2289; Wofford v. McKinna, 23 Tex. 44; Campbell v. Johnson, 44 Mo. 248; Jennings v. Brigeadine, 44 Mo. 232; Carter v. Holman, 60 Mo. 498; Mudd v. Dillon, 166 Mo. 110; Martin v. Kitchen, 195 Mo. 477.

*Chas. J. Maurer* for respondent.

That the prayer for an injunction is the proper remedy in this cause is shown by the following cases: Lakeman v. Railroad, 36 Mo. App. 363; Stilwell v. Railroad, 39 Mo. App. 221; Carlin v. Paul, 11 Mo. 32; Fuhr v. Dean, 26 Mo. 116; Downing v. Dinwiddie, 132 Mo. 92.

STATEMENT.—The appeal in this case was prosecuted to the Supreme Court on the theory that the title to real estate was involved. On motion of the respondents, the Supreme Court transferred the case to this court, and it was thereafter transferred by this court to the Springfield Court of Appeals under the provisions of an act of the Legislature approved June 12, 1909. [See Laws of Missouri 1909, p. 396; see, also, sec. 3939, R. S. 1909.] In due time the cause was disposed of by the Springfield Court of Appeals through an opinion prepared by Judge GRAY of that court, as will appear by reference to William Geismann et al. v. Frederick Trish et al., 151 Mo. App. 714, 132 S. W. 298. Subsequently the Supreme Court declared the said legislative act, which purported to authorize the transfer of cases from this court to the Springfield Court, to be unconstitutional. The case was thereafter transferred by the Springfield Court of Appeals to this court, on the theory that the jurisdiction of the appeal continued to reside here and the proceedings had in the Springfield Court with reference thereto were *coram non judice*.

The case has been argued and submitted here, and upon due consideration, while we agree to the result

arrived at by the Springfield Court of Appeals in the opinion above referred to, we prefer to lay our decision upon a different ground.

The suit is one in equity to enjoin the defendants from obstructing and interfering with plaintiffs' right to use a private alley. The trial court rendered judgment for plaintiffs and defendants have appealed.

The facts appear from the evidence to be as follows: Frank Humann was the owner of a parcel of land in the city of St. Louis, having a frontage of 150 feet on the eastern line of Union avenue, with a depth eastwardly of 125 feet, and bounded on the north by Cote Brilliante avenue and on the south by a public alley. This he subdivided into five lots fronting on Union avenue, each with a depth of 125 feet. The northern one—that is, the lot bordering on Cote Brilliante avenue—was given a front of fifty feet on Union avenue, the other four each a front of twenty-five feet. Sometime prior to 1892, Humann erected a dwelling-house on each of the four twenty-five-foot lots. At this time there was a fence along the eastern line of the lots, dividing them from the property on the east. This division fence ran parallel with, and was 125 feet eastwardly from, the eastern line of Union avenue. At the time Humann erected the houses on his four lots, he built and located another fence across the four lots parallel with and distant ten feet westwardly from the division fence on the east. At the same time he located and built coal sheds and other outhouses for the four dwellings along the western edge of the ten-foot strip so indicated, and he made gates and openings therein. The ends of the strip were left open and unobstructed. Thus, by his permanent buildings, fences, gates and openings, Humann clearly and unmistakably located, fixed and defined the eastern ten feet of his five lots as an alleyway, open and unobstructed from Cote Brilliante avenue to the public alley on the south of his property. This alleyway was

the only means whereby coal and other supplies of like nature could be brought upon the lots from the rear. With the property so built upon, improved, constructed and arranged, Humann, during the years 1893 and 1894, sold and conveyed the five lots, each to a different grantee, selling first the northern, or fifty-foot lot, next the southernmost twenty-five-foot lot, and thereafter the other three twenty-five-foot lots. By his deeds conveying the fifty-foot lot and the northern three twenty-five-foot lots, Humann made it quite clear that the *eastern ten feet* of each of said lots was reserved for use as an alley, and the deed by which he conveyed the southernmost lot—that is, the twenty-five-foot lot bordering on the public alley—contained this reservation: ''Ten feet of said lot being reserved as a right-way.'' The defendants are the owners of this southernmost lot, and the plaintiffs are the respective owners of the other twenty-five-foot lots. As each one acquired his lot, he found the alley-way, indicated and open as above mentioned. It appears that for some fourteen or fifteen years this strip was recognized and used as an alley by the owners of the four twenty-five-foot lots. (The fifty-foot lot remained vacant.) Each of them had a gate opening out on to it and each used it for getting in coal and carrying away ashes and garbage. and a sewer was laid in it for their use connecting with the sewer in the public alley. During this time, there was no interruption of such use, except that in 1903 defendants, vexed by coal wagons injuring their shed, strung a wire across the southern end. This wire, however, according to plaintiffs' evidence, remained up only about ten minutes, when it was knocked down, and stayed down. In 1907, however, defendants built a fence across the southern end of the alley, completely obstructing it and depriving plaintiffs of its use. Hence this suit.

CAULFIELD, J. (after stating the facts).—The defendants' contention, that the reservation was void because indefinite in description of the way intended, does not meet with our approval. The language used is, "Ten feet of said lot being reserved as a right-way." It is true that the location of the way could not be determined from a mere reading of the deed. The language used leaves us in doubt as to the real intention of the parties in that respect. But in such circumstances the trial court was at liberty to receive parol evidence showing the situation and conduct of the parties and the state and condition of the premises, with a view to ascertaining the intention of the parties in using the language to be construed. [Bernero v. McFarland Real Estate Co., 134 Mo. App. 290, 114 S. W. 531; Salisbury v. Andrews, 19 Pick. 250, 253; Washburn's Easements and Servitudes (4 Ed.), p. 277; George v. Cox, 114 Mass. 382, 387.] And if it appeared from such parol evidence that the place in regard to which the language was used had a way over it already fixed by buildings or permanent enclosures, the language was rightfully construed to be a reservation of the way thus located, fixed and defined. [Salisbury v. Andrews, 19 Pick. 250, 253; Washburn's Easements and Servitudes (4 Ed.), p. 277.] Especially if it appeared that such way was thereafter for a long time used by the grantee of the easement and those claiming under him, the grantor acquiescing in such use. The state and condition of the premises, and the subsequent user, would show what the parties intended by the deed and would operate as an assignment of the way as effectually as if the location had been fixed by the deed. [George v. Cox, 114 Mass. 382, 387; Davis v. Watson, 89 Mo. App. 15, 30; Washburn's Easements and Servitudes (4 Ed.), p. 265; Wynkoop v. Burger, 12 Johns, 222; 3 Greenleaf's Cruise on Real Property, p. 27 (note); Tiedeman on Real Property (2 Ed.), p. 609; Kraut's Appeal, 71 Pa. 64; Bannon

v. Angier, 2 Allen's Reports, 128; Warner v. Railroad Company, 39 Oh. St. 70; Gaston v. Railway Company, 120 Ga. 516.]

Now, in the case at bar, there can be no doubt that the language of the deed does reserve a right of way over the defendants' property. It is clear also that such language was used in regard to a place over which a way was already fixed by buildings or permanent enclosures. By fences and sheds and other outhouses and gates and openings, the eastern ten feet of all the lots had been clearly marked and set apart as a way at the time the deed was made. It also appears that within a year Humann sold the other three lots with the dwelling houses thereon, and they were occupied and the occupants immediately commenced the use of the way so marked and set apart, and continued in such use for at least nine years before any interruption whatever occurred, and then the interruption was a mere temporary one of some ten minutes duration. According to all the authorities the language used in the deed was rightfully construed by the trial court to be a reservation of the way thus located, fixed, defined and used. The judgment of the trial court was right and should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.