# LAMONT GAS & OIL CO. v. DOOP & FRATER.

### No. 2876. Opinion Filed September 23, 1913.

### (135 Pac. 392.)

1.  **MINES AND MINERALS — Oil Wells—Drilling Contract—Construction.** A written contract for drilling oil wells provided that the driller should drill to a depth of 850 feet, unless sooner stopped by the owner, and that, should it be necessary and possible to drill said wells ·deeper than 850 feet, the driller so undertook, the owner to pay therefor at a fixed price per foot, to such a depth as was deemed satisfactory to it, or to water. A further provision of said contract, under the heading ''Payment,'' provided that all money should be due and payable on said drilling contract when each well was turned over to and accepted by the owner, less such sums as might have been advanced under another clause of the contract. One well was drilled to a depth of 863 feet, when a controversy over the payment arose. Neither oil nor gas had been struck, and the owner insisted upon the driller going down a greater depth, which was necessary if the prospect was to be continued. It does not appear that it was impossible to do further drilling. Payment being refused, the driller removed its rig, and brought suit to recover for the drilling done and other items claimed to be due. The court charged the jury that if they found the plaintiff had drilled a well to the depth of 850 feet, said well, under the terms of the contract, was completed, and plaintiff was entitled to recover both for drilling and reaming. Held, an erroneous construction of the contract.

2.  **CONTRACTS—Construed as a Whole.** The intention of the parties must be deducted from the entire agreement, and not from any part or parts of it, because, where a contract has several stipulations, it is plain that the parties agreed that their intention was not expressed by any single part or stipulation of it, but by every part and provision in it, considered together, and so construed as to be consistent with every other part.

3.  **MINES AND MINERALS—Oil Wells—Breach of Drilling Contract.** An instruction which concluded by telling the jury that defendant would not be entitled to recover damages on its counterclaim, unless the jury found that certain charges, presented by the driller to the owner for reaming a well, were fraudulent, wicked, wrongful, and not made in good faith, is erroneous and constitutes reversible error.

4.  **APPEAL AND ERROR—Assignment of Error—Exclusion of Evidence.** In order that this court may consider assignments of error relating to the exclusion of evidence, there must be a showing in the record as to what the excluded evidence would have been, before the court can say that there was reversible error in the ruling.

(Syllabus by Sharp, C.)

*Error from District Court, Grant County;*
*W. M. Bowles, Judge.*

Action by Doop & Frater against the Lamont Gas & Oil Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Parker & Simons,* for plaintiff in error.

*Tetirick & McKelvey,* for defendants in error.

Opinion by SHARP, C. On the 20th day of December, 1909, in the district court of Grant county, Doop & Frater, a partnership, brought suit against the Lamont Gas & Oil Company, on account of an alleged indebtedness, due said partnership, arising out of a contract to drill two oil or gas wells for the defendant company. Plaintiff's petition alleged that there was due it the sum of $1,078.75 for drilling and $1,064 for reaming a well by it drilled under said contract, and an additional cash bonus of $300, or a total of $2,442.75. The drilling contract relied upon by plaintiff was in writing, and a copy thereof is attached to plaintiff's petition, and made a part thereof. The provisions of the contract bearing upon the controversy between the parties are as follows:

"That in consideration of one dollar and twenty-five cents ($1.25) per lineal foot, the parties of the second part agree to drill two wells for gas or oil for the party of the first part, to a depth of eight hundred and fifty (850) feet unless sooner stopped by party of the first part. In event that the said party of the first part should stop drilling before a depth of six hundred and fifty (650) feet is reached, as a result of striking gas or oil, then said party of the first part agrees to pay said party of the second part one dollar and twenty-five cents ($1.25) per lineal foot to the depth of six hundred and fifty (650) feet, termed in that event, the completion of the well. It is agreed that the said second party shall use all due diligence and care to enter all gas sand in as dry condition as possible.

"Should it be necessary, and possible, to drill said well deeper than eight hundred fifty (850) feet, said parties of the second part agree to drill the same deeper at the same price per lineal foot as herein before mentioned, to such depth as is deemed satisfactory to said party of the first part, or to water."

### "Advances.

"Said party of the first part agrees to pay the said parties of the second part the sum of seventy-five (75) dollars when drilling rig is in position ready to begin work, at each of said wells, same to be deducted from the cost of well when final settlement is made and parties of the first part to furnish fuel for said wells, this also to be deducted when final settlement is made."

### "Payment.

"All money shall be due and payable on this contract for drilling and completing said wells, when each well is turned over to and accepted by said party of the first part, less such sums as have been advanced. In case of only one well drilled then party of the first part agrees to pay party of the second part a cash bonus of three hundred (300) dollars."

### "Reaming.

"Said party of the first part to pay for all reaming necessary at twenty-five ($25.00) per day, labor of 24 hrs. for two (2) men."

Defendant's answer denies any liability to plaintiff, on account of the latter's failure to comply with the terms of said written contract, and asked judgment in the sum of $1,000 damages, caused by plaintiff's breach of said contract. The trial resulted in a verdict in favor of plaintiff in the sum of $1,392.50.

Considering the assignments of error in the order presented in the brief of counsel for plaintiff in error, we shall first consider the paragraphs of the court's charge complained of. Construing the drilling contract, the court gave the jury the following charge:

"You are instructed, gentlemen of the jury, that under and by virtue of the contract entered into by and between the plaintiff and the defendant all money was due and payable under said contract for drilling and completing said well when said well was turned over to and accepted by the party of the first part—that is to say, the defendant in this case—less such sums as had been advanced, but in this regard you are instructed as a matter of

law that if you find from a preponderance of the evidence that the plaintiff dug or sunk said well to the depth of 850 feet, said well, under and by virtue of the terms of the contract was completed, and the amount due for the construction of said well, including the amount due for necessary reaming, was then and there payable, and an arbitrary refusal upon the part of the defendant to accept said well could not avail the defendant in this case."

It is not denied but that plaintiff had drilled said well to a depth of 863 feet. The court's charge told the jury that if said well had been drilled to a depth of 850 feet, then under and by virtue of the terms of the contract it was completed, and that both the amount due for drilling and necessary reaming was then and there payable. Obviously this was error, as the contract provided that, should it be necessary and possible to drill said well deeper than 850 feet, the plaintiff should do so, to such a depth as was deemed satisfactory to said party of the first part, or to water, and at the same price per lineal foot as thereinbefore provided. The court's charge does not take into consideration the latter part of the first provision of the contract, hereinbefore set out. Nor does it consider the further provision of said contract, providing that all money shall be due and payable on said drilling contract when each well is turned over to and accepted by said party of the first part, less such sums as have been advanced under authority of another provision. It is not contended that the well drilled was at any time accepted by defendant, but that on the other hand, acting through its officers, it at all times demanded of plaintiff that it drill said well to a greater depth, as it had agreed and undertaken to do. No oil or gas had been found when the depth of 863 feet was reached. It does not appear that further drilling was impossible, so that, if the prospecting for oil and gas was to be continued further, as was the purpose of the contract, it was necessary to drill the well deeper. It was doubtless this very thought that prompted the parties to expressly provide for the continuation of the drilling until either the owner of the well was satisfied, or water was reached, and for which further drilling additional consideration was provided. No payment, other than $75 and the cost of fuel, was to be paid until

the well being drilled was turned over to and accepted by the company. This included, not only the cost of drilling, but the incidental work of reaming as well.

In construing a contract the intention of the parties must be deducted from the entire agreement, and not from any part or parts thereof, because where a contract has several stipulations, it is plain that the parties agreed that their intention was not expressed by any single part or stipulation of it, but by every part and provision in it, considered together, and so construed as to be consistent with every other part. *Kansas City Bridge Co. v. Lindsay Bridge Co.*, 32 Okla. 31, 121 Pac. 639. Construing the contract as a whole, it cannot be said that when plaintiff drilled said well to a depth of 863 feet, the contract was completed, and the contract price for drilling and reaming due, when it is made to appear that further drilling was not impossible, but, on the contrary, was necessary, if the work done was to be of value, and that demand that the work be continued was made. On the other hand, if the failure of the plaintiff to complete its contract was brought about or caused by the act of the defendant, that fact, being made to appear, would not warrant the defendant in escaping liability for the work done.

Concerning defendant's counterclaim, the court gave the following instruction:

"You are instructed, gentlemen of the jury, that if any amount was due from the defendant to the plaintiff for reaming said well, as defined by these instructions heretofore given, and upon the completion thereof—that is to say, when said well was dug to the depth of 850 feet—the defendant denied any liability for reaming and refused to pay therefor, the plaintiff was justified in refusing to continue the digging of said well, and the defendant would not be entitled to recover anything upon their cross-bill in the shape of damages, unless you find that the charges presented for reaming were fraudulent, wicked, wrongful, and were not made in good faith."

As we have seen, payment for drilling and completing said well, which would, of course, include any necessary reaming, was not due until the well was turned over to and accepted by the company, unless it should be made to appear that defendant not

only refused payment at the time, but unconditionally denied liability, even though plaintiff continued to perform and carry out its part of the contract. The principal vice of the instruction lies in the fact that it tells the jury that defendant would not be entitled to recover damages on its counterclaim, unless the charges presented by plaintiff for reaming were *fraudulent, wicked, wrongful, and not made in good faith.* Why it should first be determined that the charges presented for reaming were of the character indicated we are unable to conjecture, and counsel for plaintiff below, having filed no brief in this court, have not undertaken to defend the charge. If plaintiff had misconstrued the terms of the contract, and was asserting a claim for which defendant was not legally liable, or which under the contract was not then due, and, persisting in its position, refused to carry out and perform its part of the contract, in consequence of which defendant sustained injury, the plaintiff would be liable for such damages as would fairly compensate the defendant for the loss sustained, without regard to the existence of an evil motive on plaintiff's part.

At the trial the defendant sought to introduce evidence for the purpose of showing that at the time the contract was entered into the members of the plaintiff firm explained to the officers of defendant company the meaning of the clause with reference to reaming the well, providing that the party of the first part was to pay for all reaming necessary, at $25 per day, labor of 24 hours, for two men. This testimony was by the court excluded, and it is urged as ground for reversal. It does not appear, however, from the record before us what the evidence of the several witnesses would have been, if admitted. In order that this court may consider assignments of error relating to the exclusion of evidence, there must be a showing in the record as to what the excluded evidence would have been before the court can say that there is reversible error in the ruling. *Hutchings v. Cobble,* 30 Okla. 158, 120 Pac. 1013; *Turner et al. v. Moore,* 34 Okla. 1, 127 Pac. 487; *Muskogee Electric Traction Co. v. Staggs,* 34 Okla. 161, 125 Pac. 481. If the record had shown what the witnesses would have testified to, and if it further ap-

peared that the testimony excluded was favorable to the defend-
ant, it may be, under the rule that where the meaning of the
parties to an instrument is uncertain from the words used, and it
is not within the power of the court to ascertain their meaning
by reference to the body of the instrument, evidence of the acts
and statements of the parties, contemporaneous with and imme-
diately prior to the execution of the instrument, may properly be
considered, as was held in *Brown v. Markland,* 16 Utah, 360, 52
Pac. 597, 67 Am. St. Rep. 629; *Fayter v. North,* 30 Utah, 156,
83 Pac. 742, 6 L. R. A. (N. S.) 410; *Shenandoah Land Co. v.
Clarke,* 106 Va. 100, 55 S. E. 561; *Bernero v. McFarland Real
Estate Co.,* 134 Mo. App. 290, 114 S. W. 531; *Geismann et al.
v. Trish,* 163 Mo. App. 308, 143 S. W. 876; *Haven v. Brown,*
7 Me. (7 Greenl.) 421, 22 Am. Dec. 208; *Dodd v. Witt,* 139
Mass. 63, 29 N. E. 475, 52 Am. Rep. 700. The case of *Fay-
ter v. North, supra,* contains an able and instructive discus-
sion of the rule admitting parol evidence, not only to explain
a latent ambiguity, but, where the foregoing rule permits, to
show what was said and done prior to and contemporaneous with
the execution of a written instrument.

Other errors assigned by plaintiff in error we deem it un-
necessary to consider. The record contains over 300 pages of
unindexed typewritten matter. The applicability and correctness
of the defendant's requested instructions would involve a close
and careful consideration of the entire record, and that without
the aid of a brief on the part of the defendant in error. The
court's charge, in the particulars heretofore indicated, consti-
tuted error necessitating a reversal of the case.

The judgment of the trial court should therefore be reversed,
and the cause remanded for a new trial.

By the Court: It is so ordered.