Richard J. O'BRIEN and Esther M. O'Brien, (Plaintiffs) Appellants,

v.

Alvina RICHTER, Henry Richter, Leonard Lemkemann, Laura Lemkemann, Louis Lemkemann, Nicholas Lemkemann, Loretta Lemkemann, Norman Lemkemann, Jo Ann Lemkemann, and Ima Lemkemann, (Defendants) Respondents.

No. 54666.

Supreme Court of Missouri, Division No. 1.

June 8, 1970.

Lewis, Rice, Tucker, Allen & Chubb, J. L. Pierson and John Torrey Berger, Jr., St. Louis, for plaintiffs-appellants.

Robert C. Jones, Ziercher, Tzinberg, Human & Michenfelder, Clayton, for defendants-respondents.

THEODORE McMILLIAN, Special Judge.

This is a suit to determine the width of an easement or roadway across the land of the plaintiffs. The case was submitted upon a stipulation of facts; and, thereafter, the circuit court of St. Louis County, Missouri, granted defendants a 50-foot-wide roadway across the land of the plaintiffs as an outlet to a public highway. Plaintiffs appealed.

There is no dispute about the existence of the easement. In November 1867, the predecessors of the plaintiffs granted to the predecessors of the defendants an easement from their land across the land of the plaintiffs "to any road or highway that we, our heirs, or assigns may use as an outlet to any highway." From the date of the deed until this action was commenced, defendants and their predecessors have used a 20-foot roadway over the land of the plaintiffs to the public road.

Plaintiffs relocated the roadway and filed this action to obtain a declaration that they had a right to do so, and to enjoin the defendants from the use of the road as originally located.

Defendants filed an amended counterclaim, in two counts (1) asserting the right to the continued use of the old road, and damages for the interference, and (2) alternatively, if denied use of the old road, a decree to establish the width and location of a new means of access.

The court ruled that the old roadway had been abandoned by the plaintiffs; that the legal right of defendants to use it had ceased; and that defendants were entitled to a roadway 50 feet wide from their land across the land of the plaintiffs.

On this appeal plaintiffs contend that the court erred in overruling their motion to dismiss the amended counterclaim of the defendants, and in ruling that respondents were entitled to a roadway to Nara Drive because (a) the only question before the court was whether or not the action of the plaintiffs in relocating was wanton or oppressive; (b) that the counterclaim neither alleged wantonness and oppressiveness; (c) nor was there any evidence to show such.

The second claim of error pertained to the admissibility of certain stipulated evidence. And, finally, that the court erred in granting defendants a specific roadway of a specific width because such a ruling would effectively deny plaintiffs the right to relocate in the future, and the width of the right of way had been established as 20 feet.

The lands of both parties lie in an unincorporated portion of St. Louis County, Missouri. Because of the nature of the controversy, it would unduly extend the length of this opinion to set out in full the legal description of the properties in question. For our purposes, defendants' property consists of 5.136 acres which is surrounded by three lots (two lots to the south and one to the west) belonging to plaintiffs. At the time the trial court considered this cause, and at the present time, the relocated road on plaintiffs' land is designated as Tina and Nara Drives, both of which are existing concrete rights of way dedicated to public use. The right of way of Nara Drive ends three feet from the south line of defendants' property, at the same point of intersection as did the old roadway.

Further, the evidence was that plaintiffs have provided defendants a right of way 20 feet wide from defendants' property line to Nara Drive. This right of way coupled with Nara Drive provides defendants with a paved route of access to the public highway. Nara Drive, a 50-foot-wide road, intersects plaintiffs' property; the major plot is, of course, to the south of Nara Drive, while to the north of Nara Drive is

the three-foot strip which adjoins defendants' south property line. The roadway from Nara Drive, northwardly, to plaintiffs' three-foot strip is 50 feet, and plaintiffs have paved an actual surface of Nara Drive to a width of 30.05 feet. To complete the picture, if plaintiffs are correct, the roadway from defendants' south property line would be 20 feet across the three-foot strip of the plaintiffs' property, joining the 30-foot paved strip on Nara Drive, thus giving an hourglass effect.

All parties concede, and the language of easement grant provides, an easement to defendants' land across plaintiffs' land "to any road or highway that we, our heirs, or assigns may use as an outlet to any highway." As this right was specifically reserved in the granting instrument, and the easement grant authorized it, the location may be changed from time to time in accordance with the contract. Bunch v. Wheeler, 210 Mo. 622, 109 S.W. 654 (1908); Ford v. White, 179 Or. 490, 172 P.2d 822.[1]

In our opinion the first contention of the plaintiffs that their motion to dismiss the amended counterclaim for the reason that wantonness and oppressiveness were neither pleaded nor proved is without merit. First, Count I, which asserted the right of defendants' continued use of the old roadway, did allege wantonness; and, true, there was no proof of this issue. But, in any event, the issues tendered by Count I were resolved in favor of the plaintiffs and against the defendants. So the error, if any, is harmless.

Plaintiffs next complain about the acceptance into evidence of the stipulations contained in paragraphs 5 and 7. Essentially, paragraph 5 asserted (1) that both properties are located in an unincorporated area of St. Louis County, (2) both zoned single-family residential under the St. Louis County Zoning Ordinance, and (3) are capable of being subdivided. Paragraph 7 contained §§ 1005.80 and 1005.110, Revised Ordinances of St. Louis County. Because of the close relationship between the two paragraphs with the objections leveled by plaintiffs, both will be considered together.

Plaintiffs made only a general objection as to the reception of the evidence set forth in the two paragraphs, and a general objection saves nothing unless it can fairly be said that the evidence is not competent for any purpose. State ex rel. State Highway Commission v. Rauscher Chevrolet Co., Mo.Sup., 291 S.W.2d 89.[2] Here, in our opinion, the evidence complained of had a bearing on the width of the way that was reasonably necessary for the purposes for which the easement was created. This for the reason that the easement grant in the 1867 deed was silent as to width, and that both properties are located in unincorporated portions of St. Louis County. The subdivision regulations of St. Louis County provide that the minimum width for any street shall be at least 50 feet, except for where the topography or special conditions make a street of less width more suitable, and that the street and alley arrangement of subdivisions must also be such as to cause no hardship to owners of adjoining property when they plot their own land and seek to provide for convenient access to it. St. Louis County Revised Ordinances, §§ 1005.808 and 1005.100.

If respondents subdivide their 5.136 acres of ground, the reasonable requirement of the St. Louis County Planning Commission will be that they obtain access to their subdivisions over the three-foot strip in dispute and connect with Nara Drive so that there is no bottleneck going from the south line of defendants' property, narrowing on the three-foot strip and then widening out to form an hourglass as it joins the northern protrusion of Nara Drive. It is unreasonable, illogical, and of little value to allow roadways joining one

1. See 80 A.L.R.2d 778.

2. See 55 A.L.R.2d 773.

property to another to take the form of an hourglass and force traffic to flow through the three-foot length, when proper, reasonable development and roadway usage would require it to be a uniform width throughout.

■ Now, for the first time, on appeal, plaintiffs charge that the fact that the 5.-136 tract of the defendants can be subdivided is a legal conclusion. Conceding that the fact of being subdivided is a conclusion, yet, it is a fact susceptible of proof and it would be grossly unfair to both the court and litigants to convict them of error which, if specifically called to their attention either on trial or in the motion for a new trial, could have been corrected. Thus, we find plaintiffs' objection in this respect untimely and preserves nothing for review.

Count II of the defendants' amended counterclaim proceeded upon the theory that if the court found the old roadway to have been abandoned, defendants then had only the right of a reasonable roadway leading from their premises across a new passageway used by the plaintiffs as an outlet to a public road. The prayer was for the court to determine, order, and decree the width and location of the relocated way. The trial court found that defendants have the right to a reasonable roadway leading from their land to the northernmost protrusion of Nara Drive, and that a reasonable roadway was 50 feet.

■ Obviously, the grant of an easement will, of course, control its location, if specified therein. See In re West Tenth Street, 267 N.Y. 212, 196 N.E. 30.[3] In Northwest Electric Power Co-op., Inc. v. American Motorists Ins. Co., Mo.App., 346 S.W.2d 701, 704, wherein there was a grant to defendant of a right to cross plaintiffs' land at any location, the court cited with approval the general rule:

"That where a conveyance of right of way does not definitely fix its location, the grantee is entitled to a convenient, reasonable, and accessible way within the limits of the grant."[4]

■ So, too, where an easement in land is created in general terms without giving its definite location and description, the course over which the right is to be exercised may be subsequently fixed by agreement of the parties, or a selection may be inferred within the boundaries of the land over which the right is granted by proof of use of a particular way on the part of the grantee or owner of the dominant estate along with acquiescence of the grantor or owner of the servient estate. Massa v. Union Electric Light & Power Co., Mo. App., 50 S.W.2d 714, and Geismann v. Trish, 163 Mo.App. 308, 143 S.W. 876.

Also, the St. Louis Court of Appeals, in Bolomey v. Houchins, 227 S.W.2d 752, wherein there was a grant of an easement without definitely fixing its location other than to refer to it as "the right of way through said tract of land," and the parties were unable to agree, cited the general rule: "If parties cannot agree as to location of easement created in general terms, a court of equity has jurisdiction to determine the location of the servitude, in which event it must proceed with proper regard for rights of both parties, taking into consideration condition of premises and purpose which easement was intended to serve, and bearing in mind that grantee is entitled to a reasonably convenient and accessible way within limits of the grant."[5]

Inasmuch as both parties have agreed by stipulation that whatever road or passway defendants may be entitled to shall cross plaintiffs' property at the extension northwardly of Nara Drive, the real problem is the width of the way which is reasonably necessary for the purpose for which it was created.

---

3. See 98 A.L.R. 634.

4. See 28 C.J.S. Easements § 80, p. 760.

5. 17 Am.Jur., Easements § 86.

■ The evidence shows that plaintiffs have paved an actual surface of Nara Drive to a width of 30.05 feet. However, this made portion of the road is a far different thing from the roadway itself. See Franck Bros., Inc. v. Rose, Mo.Sup., 301 S.W.2d 806, where the court defined roadway as "the strip of land over which a road is constructed." Also, the word "road" or "roadway" has seldom, if ever, been defined to mean land, but indicates a right of passage. Hence, since the northern protrusion of Nara Drive is 50 feet wide leading to the three-foot strip belonging to the plaintiffs where it joins defendants' southern property line, it is reasonable for defendants to lay out a 50-foot roadway and pave 30.05 feet of it on their property to their southern boundary line; and it is reasonable to allow them to continue the roadway in the same manner and width as Nara Drive, i. e., 50 feet.

Plaintiffs' arguments that the roadway should be fixed at 20 feet, based upon prior use of the old roadway, Bladdick v. Ozark Ore Co., Mo.Sup., 381 S.W.2d 760, 765–766, and the fact that neither a dominant owner nor servient owner is permitted to materially alter the character of the servitude, while persuasive, are distinguishable from the facts in this case. Gerber v. Appel, Mo.App., 173 S.W.2d 90, 93, Tracy v. Klausmeyer, Mo.App., 305 S.W.2d 84. In the Bladdick case, supra, for years the plaintiffs' property was connected with the public highway by way of a 20-foot tract that crossed defendants' property. By a subsequent express grant, defendants acquired a 50-foot right of way over plaintiffs' property, and recognized and granted an easement to plaintiffs referring to the old 20-foot tract as "the original connecting roadway." Later, defendant interfered with plaintiffs' use of the 20-foot original roadway by an open pit mining operation. Plaintiffs cite the case for the proposition that in case of an ambiguous grant, the law is that an exercise of the easement in a particular manner with the consent or acquiescence of the parties renders it fixed. We do not disagree with plaintiffs' proposition of law; however, in the instant case, there is no issue as to where the roadway should be, but only as to the width.

Next, plaintiffs contend that neither the dominant owner nor the servient owner is permitted to materially alter the character of the servitude. To support this, they rely upon Gerber v. Appel, supra, for the proposition that the dominant owner cannot increase the servitude nor the servient owner diminish it. The Gerber case, supra, is of no help. It dealt with an abortive attempt to superimpose a 20-foot vehicular roadway upon a 10-foot right of way which had been granted to be used only as a walk for pedestrians.

■ In conclusion, plaintiffs argue that the ruling by the court has deprived them of their legal right to relocate the road in the future, and in the event of such a relocation, the decree would remain a cloud on their properties. In support of this contention, they cite White v. Meadow Park Land Co., 240 Mo.App. 683, 213 S.W.2d 123. The White case was a suit to enjoin defendants from establishing a private alley across the rear of plaintiffs' property, when the reservation in the granting vehicle gave the defendant only the right to establish a public alley. In the instant case, the question is not whether the plaintiffs can relocate, or relocation in any particular area, or even whether the roadway is public or private. But once the location has been ascertained, and the width of the roadway is not defined in the grant, the question is what is the width that is reasonably necessary for the purposes for which the roadway was created. In our opinion, this is all that we decide. The question as to whether or not at some future time the plaintiffs, pursuant to the grant, can relocate is premature.

Thus we find for reasonable access and uniformity in the use of the roadway, and in compliance with the subdivision regulations of St. Louis County, the roadway es-

tablished by the court as 50 feet wide and located so as to join the northernmost protrusion of Nara Drive was a proper and reasonable location of the roadway. Accordingly, we hold that the judgment and decree rendered by the circuit court be and is affirmed.

SEILER, P. J., and HOLMAN, J., concur.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.